ISAAC R. PHARIS, Appellant, *v.* R. NELSON GERE, Respondent.

In an action for forcible entry and detainer of two salt blocks, known as Nos. 22 and 23, it appeared that they were held in a common ownership, though by separate leases from the state; they were about thirty feet apart but in the same enclosure, and while they could be utilized separately and had no necessary connection, they had been used and operated together. Defendant, for the purpose of taking possession of both blocks, forced the lock, put on a new one and entered the enclosure. Thereafter defendant met plaintiff on block 22 and notified him that he took possession of both, and, after a personal struggle for possession, defendant retained it. The court was requested, but refused to charge, that there was no evidence of a forcible detainer of block 23. *Held,* no error; that while more than mere words is necessary to make a forcible detainer, yet as the violence was aimed at the possession of both blocks, was employed to effect and did in the end secure that possession, the jury were warranted in finding a forcible detainer of the whole property within the enclosure.

The blocks were held by plaintiff and his brother C. in common. The latter had been declared a lunatic in proceedings *de lunatico,* and a committee of his person and estate appointed. Such committee, without an order of the court authorizing it, executed an instrument purporting to be a lease for ten years of the premises to a corporation organized for the purpose of controlling the entire salt manufacture, but which instrument was substantially a transfer, for the period named, for a consideration, payable as rent, contingent upon the success of the enterprise. Defendant sought, under this instrument, to justify the entry and repel the charge of forcible detainer. *Held,* untenable; that the committee were not authorized to execute the instrument and the same was void.

*It seems* that, neither by common law nor under the statutes of the state (Chap. 446, Laws of 1874; Code of Civil Pro § 2338 *et seq.*), has the committee of a lunatic power to lease his estate without an order of the

court; he has no title to or interest in the real estate, but is simply an agent or representative of the court, and has no independent power to dispose of it in any manner whatsoever.

(Argued June 7, 1888; decided October 2, 1888.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department made April —, 1885, which reversed a judgment in favor of plaintiff, entered upon a verdict and granted a new trial.

The nature of the action and the material facts are stated in the opinion.

*Louis Marshall* for appellant. The pretended lease from the plaintiff to the salt company was delivered conditionally as a mere escrow; the condition of its delivery to the company was never complied with; it was never delivered to it by plaintiff's consent, and it, therefore, failed to operate as a conveyance of the plaintiff's title. (Smith on Cont. * 11; *Hawksland* v. *Gatchel*, Cro. Eliz. 835; Sheppard's Touchstone, * 59; *Gilbert* v. *N. Am. F. Ins. Co.*, 23 Wend. 43; *Jackson* v. *Richards*, 15 id. 617; *Ford* v. *James*, 2 Abb. Ct. of App. Dec. 159; *Graves* v. *Dudley*, 20 N. Y. 77; *Chouteau* v. *Suydam*, 21 id. 179; *Brackett* v. *Barney*, 28 id. 333; 13 Ohio St. 235; *Watkins* v. *Nash*, L. R., 20 Eq. Cas. 262; *S. C.*, 23 Week. Rep. 647; *Southern L. Ins. & T. Co.* v. *Cole*, 4 Fla. 359; *Cincinnati, etc., R. R. Co.* v. *McMillen*, 29 Ala. 160; *Carr* v. *Pittsburg, etc., R. R. Co.*, 80 Pa. 31; *Dietz* v. *Farish*, 53 How. Pr. 217; *S. C.*, 79 N. Y. 520; *Worrall* v. *Munn*, 5 id. 229; 3 Wash. on Real Prop. [4th ed.] 303; *Jackson* v. *Perkins*, 2 Wend. 308.) The ignorance of Pharis of the relations between Childs and the grantee deprive the delivery to Childs of all effect as a delivery to the grantee, and disposes of every ground for disputing the conditional character of such delivery. (*Worrall* v. *Munn*, 5 N. Y. 107.) Whether the conditions imposed were wise or unwise, important or unimportant, does not affect his right to demand a strict performance thereof and to insist upon his claim that, by

reason of the non-compliance with the conditions by the company, no right to occupy his premises ever passed to it. (*Plumb* v. *Tubbs*, 41 N. Y. 442, 443; *Gilbert* v. *Peteler*, 38 id. 165; *Collins* v. *Marcy*, 25 Conn. 242; *Craig* v. *Wells*, 11 N. Y. 315.) The proceedings instituted in the Supreme Court conferred no authority upon the committee to execute the lease. (*Atkins* v. *Kinnan*, 20 Wend. 241; *Sharp* v. *Speir*, 4 Hill, 76; *Striker* v. *Kelly*, 2 Den. 323; *Battell* v. *Torrey*, 65 N. Y. 294; *In re Valentine*, 72 id. 184.) The committee of the lunatic had no common law authority to execute the lease. (Wood on Land. and Ten. § 119; 1 Taylor on Land. and Ten. [8th ed.], §§ 97, 136; *L'Amoureaux* v. *Crosby*, 2 Pai. 420; *White* v. *Palmer*, 4 Mass. 147; *Beverly's Case*, 4 Coke, 126b, 127b; 1 Platt on Leases, 38; *Blewit's Case*, Ley. 47; *Foster* v. *Marchant*, 1 Vern. 262; *Knipe* v. *Palmer*, 2 Wilson, 130; *Brooks* v. *Brooks*, 3 Iredell [N. C.] 389, 392; *In re Otis*, 101 N. Y. 585; *Schneider* v. *McFarland*, 2 id. 463.) Assuming that a lease for five years might be executed without judicial sanction, the lease in the present case being for ten years and executed without any authority by the court, is void. (*Odell* v. *Durant*, 62 N. Y. 524; *Clark* v. *Barnes*, 76 id. 301.) If by the lease from the committee the salt company acquired the interest of the lunatic, it become a tenant in common with the plaintiff. As such tenants in common, both had title and the right of actual possession. Neither had the right to exclude the other from the joint possession and enjoyment of the premises with him. The excluded tenant might maintain an action of ejectment to regain possession, and if ousted by his co-tenant, an action for trespass, *quare clausum*, might be brought by the ejected tenant for the injury. (*Wood* v. *Phillips*, 43 N. Y. 152; *Dubois* v. *Beaver*, 25 id. 127, 128; *Florence* v. *Hopkins*, 46 id. 186; *Erwin* v. *Olmstead*, 7 Cow. 229; *Allen* v. *Carter*, 8 Pick. 175; *Keay* v. *Goodman*, 16 Mass. 1; *Murray* v. *Hall*, 7 C. B. 837; *S. C.*, 13 Lond. Jur. 262; *Wilkinson* v. *Haygarth*, 13 Q. B. 413; *Silloway* v. *Brown*, 12 Allen, 37;

*Bennett* v. *Clemence,* 6 id. 18, 19; *Odiorne* v. *Lyford,* 9
N. H. 502; *S. C.,* 32 Am. Dec. 387; *Stedman* v. *Smith,*
8 El. & Bl. 6, 7; *McGill* v. *Ash,* 7 Penn. St. 397; *Maddox*
v. *Goddard,* 15 Me. 218; Freeman on Co-ten. & Par. § 300;
Coke on Littleton, 199b, 200; Comyn's Dig., tit. Estates, R. 8;
1 Chitty on Pleadings, 180; 1 Washburn on Real Property
[4th ed.] 657; 2 Archbold's Cr. Pr. [8th ed.] 1030–1035;
*Mason* v. *Finch,* 1 Scam. 495; *Eads* v. *Rucker,* 2 Dana, 111;
*Presbrey* v. *Presbrey,* 13 Allen, 281; *Bowen* v. *Cherokee
Bob,* 45 Cal. 485.). Although the complaint contained two
counts the court properly instructed the jury that it might find
in favor of the plaintiff either upon the count framed under
the statute, or the count for simple trespass; and the jury
specifically determined that the plaintiff was entitled to recover
upon the statutory count. (*Newcomb* v. *Butterfield,* 8 Johns.
264; *Dubois* v. *Beaver,* 25 N.Y. 125, 176; *People* v. *Anthony,*
4 Johns. 198; *People* v. *Rickert,* 8 Cow. 226; *People* v. *Field,*
1 Lans. 222.) The acts and threats of the defendant as
detailed constituted a forcible detainer. (1 Hawkins' Pleas
of the Crown, chap. 28, §§ 26, 27, 30; 3 Bacon's Abridgment,
title, Forcible Entry, 718; 2 Archbold's Crim. Pr. 336;
Wharton's Crim. Law, §§ 2033, 2034, 2036; Code Civil Pro.
§ 1669; *Williams* v. *Warren,* 17 Wend. 257; *People* v.
*Rickert,* 8 Cow. 226; *Silloway* v. *Brown,* 12 Allen, 38; *Doe*
v. *Prosser,* Cowp. 218; *Rex* v. *Smyth,* 5 C. & P. 201;
*Milner* v. *MacLean,* 2 id. 17; *Scarlett* v. *Lamargue,* 5 Cal.
63; *Childress* v. *Black,* 9 Yerg. 317; *Hussey* v. *McDermott,*
23 Cal. 412; *Tibbits* v. *O'Connell,* 66 Ind. 171; *Mason* v.
*Powell.* 38 N. J. Law, 576; *Minor* v. *Duncan,* 54 Ga. 516.)
Whatever acts were performed by the defendant, or whatever
threats were uttered by him, referred to block 23 as well as
to block 22, and if the evidence is sufficient to sustain a
finding of a forcible detainer of either block, it sustains it as
to both. (*Benedict* v. *Hart,* 1 Cush. 487; 1 Hawkins' Pleas
of Crown, chap. 28, § 30.) The judgment-roll in the partition
suit brought by the plaintiff against his brother does not
operate either as a bar to the maintenance of this action

or an estoppel of the plaintiff from making his present claim against the defendant. (*Bissell* v. *Kellogg,* 65 N.Y. 432; *Bache* v. *Doscher,* 67 id. 729; *Otis* v. *Williams,* 70 id. 208; *In re Howard,* 9 Wall. 128; *Williams* v. *Gibbs,* 17 How. [U. S.] 257.) A defendant who explicitly admits by his pleadings that which establishes the plaintiff's right, will not be permitted to deny its existence, or to prove any state of facts inconsistent with that admission. (*Paige* v. *Willet,* 38 N. Y. 28.) The action of partition could be maintained even though neither of the tenants was in actual possession of. the property. Constructive possession is sufficient to sustain such an action. (*Florence* v. *Hopkins,* 46 N. Y. 186; *Hitchcock* v. *Skinner,* 1 Hoff. Ch. 21; *Beebe* v. *Griffin,* 14 N. Y. 235; *Woodworth* v. *Campbell,* 5 Pai. 518; *Alexander* v. *Taylor,* 4 Den. 302; *Remington Paper Co.* v. *O'Dougherty,* 81 N. Y. 474, 490.) It is too late for the defendant now to raise the question that Charles E. Pharis, or his committee, should have been joined with the plaintiff as a complainant, since the objection of non-joinder was waived by not pleading it. (*Zabriskie* v. *Smith,* 13 N. Y. 336; *De Puy* v. *Strong,* 37 id. 372; *Pharis* v. *Gere* [first appeal]; Code of Pro. § 148; Code of Civ. Pro. §§ 488, 498, 499; *Chaffee* v. *Morss,* 67 Barb. 252; *Babe* v. *Fyler,* 10 S. & M. 446; *Allen* v. *Gibson,* 4 Rand. 477; 2 Wm. Bl. 1077.) No error was committed by the court in excluding the offers to prove that there were 350 boiling blocks upon the salt reserva- tion in 1874 and 1875, and that one-half of them were out of use and stood idle during the two years, as bearing on the rental value. (*Carter* v. *Pryke,* Peake, 95; *Holcombe* v. *Hewson,* 2 Camp. 391; *Smith* v. *Wilkins,* 6 C. & P 180; *Anglesey* v. *Lord Hatherton,* 10 M. & W. 235; *Pfeil* v. *Kemper,* 3 Wis. 315; *Gouge* v. *Roberts,* 53 N. Y. 619; *Blanchard* v. *N. J. St. Co.,* 59 id. 292 , *Dana* v. *Fiedler,* 12 id. 40; *Color P. A. Co.* v. *Brown,* 37 Super. Ct. 433; *Siegel* v. *Lewis,* 54 N. Y. 651.) The exception to the admis- sion of the conversation between the plaintiff and the defend- ant, in which the latter stated to the former that he had pro-

cured a warrant for his arrest, and that he must keep away from the property and must have nothing more to do there or he would be arrested, is untenable. (*Tibbits* v. *O'Connell*, 66 Ind. 171; *People* v. *Rickert*, 8 Cow. 226.) The evidence of the conversations, in which the plaintiff forbade Gere's servants and workmen to take or hold possession of the premises, was proper. These interviews were in defendant's presence; were a part of the *res gestæ ;* were important as showing that the plaintiff did not acquiesce in the forcible taking and holding, and were had with the agents whom Gere admits having sent to commit the offense complained of while they were engaged in the performance of that mission. (Story on Agency, § 134; Sutherland on Damages, 367; *Martin* v. *Pardee*, 64 Barb. 353; *Spear* v. *Lomax*, 42 Ala. 576; *Neil* v. *Thorn*, 88 N. Y. 270; *Fountain* v. *Pettee*, 38 id. 184.)

*George F. Comstock* for respondent. The lease of the salt blocks by the committee of the lunatic was valid for the five years limited by the statute. (Laws 1874, chap. 446, pp. 573, 575; Code Civil Pro. §§ 2320, 2322, 2339, 2340, 2343, 2348.) Where a fraud has been committed upon a person no one but he or some one claiming under and through him has any cause of complaint. (*Beardslee* v. *Hotchkiss*, 96 N. Y. 201; 3 R. S. [5th ed.] 29, § 152; *Comstock* v. *Ames*, 10 N. Y. 357; *Reeder* v. *Sayre*, 70 id. 180; *Laughran* v. *Smith*, 75 id. 205; *Lounsberry* v. *Snyder*, 31 id. 514; 1 Coke on Litt. § 319; 46 N. Y. 594; 8 Cow. 226, 230, 505; 8 Term. Rep. 145; Fleta, Lib. 2, c. c. 72, 73; 1 Bac. Abr. [Phila. ed.] 368, marg.; 4 id. 138.) The statute power to sell or mortgage under orders of the court arises only on an expressed condition that the current rents of the lunatic's land, together with all the personal estate as capital, are insufficient for the purposes specified and have absolutely no practical significance unless the power to obtain out of the land such rents and profits previously existed. (*Treville* v. *Ellis*, 1 Bailey, 35, 40, 41; *Foster* v. *Marchant*, 1 Vern. 262; Chitty on Cont. 86; *Van Dusen* v. *Young*, 9 N. Y. 9–29; *Schuyler* v. *Legget*, 8 Cow. 660.) Though a lease by parol be

for more than three years, and so void for the term within the statutes of frauds, yet the tenant entering has interest from year to year, regulated in every respect by the parol demise, except as to the term. (8 Term Rep. 3; 5 id. 471; Robt. on Frauds, 139, 140; 2 Salk. 413, 414; 1 Term Rep. 150, 378; 3 Wils. 25; 2 Black. Com. 143; *Thomas* v. *Hatch*, 3 Sumner, 170, 179; *Oxendon* v. *Lord Compton*, 2 Vern. 69 and notes; *In re Salisbury*, 3 Johns. Ch. 347; *De Freeville* v. *Ellis*, 1 Bailey Eq. [S. C.] 35; *Odell* v. *Durant*, 62 N. Y. 524; *Clark* v. *Barnes*, 76 id. 301; *Schuyler* v. *Legget*, 8 Cow. 660.) An action of trespass cannot be maintained by one tenant in common against his co-tenant for an entry upon and taking possession of lands, whether openly and peaceably or by stealth or violence, no division in the occupancy being possible or practicable, or none having been made. (*Wood* v. *Phillips*, 43 N. Y. 152; *Van Orman* v. *Phelps*, 9 Barb. 500, 506; *McKay* v. *Mumford*, 10 Wend. 351, 353; *Dresser* v. *Dresser*, 40 Barb. 300; *Decker* v. *Decker*, 17 Hun, 13, 15; *Allen* v. *Carter*, 8 Pick. 175, 177; *Jacob* v. *Seward*, 41 Law Jour., C. P. 221; *Palmer* v. *Bowker*, 106 Mass. 318, 319; *Warner* v. *Abbey*, 112 id. 355, 360; 17 Wend. 257; 8 Barn. & Cress. 269.) What is called in the complaint a forcible entry and detainer is only an entry and occupation by or under the authority of the co-tenant, having rights in all respects equal to his own. (8 Barn. & Cress. 269.) The complainant, in an action for a forcible detainer, must have the right and title to enter all on his side, and the alleged wrong-doer must have no right or title at all to justify his presence on the premises. (*Wood* v. *Phillips*, 43 N. Y. 152; 17 Wend. 257.) The plaintiff's sworn allegation in the complaint in the partition suit is a solemn judicial admission absolutely decisive as evidence against the now pretended forcible detainer. (1 Greenl. on Ev. § 210.) The allegation was true, if, in the transactions on the premises, called the forcible entry and detainer, the salt company took and held the possession as tenant in common under the sub-lease or authority of Charles E. Pharis, as

co-tenant of the plaintiff, by his committee. (41 Law Jour., C. P. 224, 225.) The plaintiff's partition complaint may, therefore, mean that, when he swore to it, he had elected to consider his lease as delivered, and the defendant as peaceably occupying under it. ( *Woodworth* v. *Campbell*, 5 Paige, 518; *Jenkins* v. *Fahey*, 73 N. Y. 355, 363.) The present defendant was agent of the salt company merely in all the acts now drawn into controversy; and if his principal could set up a judicial bar to a suit founded upon those acts, the same defense is manifestly available to its mere agent. (1 Greene's Ev. § 523 and note; *Emery* v. *Fowler*, 39 Me. 326.) An owner is deemed constructively in possession when he has an estate entitling him to immediate possession, and there is no actual adverse possession in some one else. The possession of a tenant is the possession of the landlord if the relation is acknowledged by both parties. (*Brownell* v. *Brownell*, 19 Wend. 367; *Clapp* v. *Bromagham*, 9 Cow. 531; *Fowler* v. *Hopkins*, 46 N. Y. 182; *Sullivan* v. *Sullivan*, 36 id. 37; *Jenkins* v. *Van Schaack*, 3 Paige, 382.) Parol evidence to show that the plaintiff's own lease was delivered at the office of the salt company to its president under conditions, was inadmissible, and, therefore, such lease was absolute. (5 N. Y. 229; 26 id. 491; 49 id. 107; 67 id. 281, 282; 11 Barb. 349; 28 N. Y. 341; 52 id. 57.) All the tenants in common must join the action of trespass on lands. (*De Puy* v. *Strong*, 37 N. Y. 372; *Austin* v. *Hall*, 13 Johns. 286; *Low* v. *Mumford*, 14 id. 426; *Decker* v. *Livingstone*, 15 id. 479; *Hill* v. *Gibbs*, 5 Hill, 56, *note*.) Defendant having a right to occupy as tenant from year to year, this action could not be maintained. (*People ex rel. Klein* v. *Rickert*, 8 Cow. 226.) A forcible entry or detainer cannot be predicated upon anything less than direct violence producing fear of personal assault and injury. Threats of civil and criminal prosecutions, especially if uttered at another time and place, were never held to be any part of a forcible entry or detainer. They do not prove or tend to prove a trespass on lands. (*Hamilton* v. *N. Y. C. R. R. Co.*, 51 N. Y. 101; *Waldele* v. *N. Y. C. & H. R. R. R. Co.*, 95

id. 274; *Hutchins* v. *Hutchins*, 98 id. 56; 1 Greenl. Ev. § 52; 4 Gray, 581, 584; *Doe* v. *Bell*, 5 Term Rep. 474; *Clayton* v. *Blakely*, 8 id. 3; *Laughgran* v. *Smith*, 75 N. Y. 205; *Lounsbury* v. *Snyder*, 31 id. 514; *Harris* v. *Frink*, 49 id. 24, 32; *Larned* v. *Hudson*, 60 id. 102.) To constitute a forcible entry and detainer it must be accompanied by circumstances of force or terror in respect to the person. A mere naked trespass upon the premises is not sufficient. (*People ex rel. Niles* v. *Smith*, 24 Barb. 16; *Willard* v. *Warren*, 17 Wend. 257; *Wood* v. *Phillips*, 43 N. Y. 152; 25 Cal. 54; 28 id. 527; 31 id. 122; 8 id. 499; *Gray* v. *Finch*, 23 Conn. 495; *Wilkinson* v. *Haywarth*, 11 Lond. Jour. pt. 1, 104.; *Jacob* v. *Seward*, 38 L. Jour., C. P. 252; 4 L. R., C. P. 328; Littleton's Tenures, § 322; *Duncan* v. *Sylvester*, 13 Me. [1 Shepley] 417; *Porter* v. *Hooper*, 13 id. 25; 4 Dev. & Bat. 199; *Jones* v. *Child*, 8 Dana, 163; Coke Litt. 784, 785, and note; 1 Bibb. 422; *McPherson* v. *Seguine*, 3 Dev. 153; *Taylor* v. *Stockdale*, 3 McCord, 302; *Warren* v. *Hanshaw*, 2 Aiken, 141; *Bennett* v. *Bullock*, 35 Penn. St. 364; *Critchfield* v. *Humbert*, 39 id. 427; *Waite* v. *Richardson*, 33 Vt. 190; *Harman* v. *Gartman*, 1 Harper [S. C.] 430; 15 Me. 218; *Dubois* v. *Beaver*, 25 N. Y. 123; *Aguerre* v. *Alexander*, 68 Cal. 21; 15 Hun, 309; 80 N. C. 114; 48 Ind. 377; *Preston* v. *Kehoe*, 15 Cal. 315.)

FINCH, J. This action was brought to recover damages for a forcible detainer of two salt blocks, identified in the evidence as numbers 22 and 23. The plaintiff had a verdict, which the General Term has reversed. On the trial the court was asked to charge that there was no evidence of a forcible detainer of block 23. The request was refused and an exception taken to the refusal, and it is upon that exception that the appellate court, so far as its opinion indicates, founded its order for a new trial. We are not contented with that decision. The argument at the bar, and a deliberate study of the proofs, have brought us to a contrary conclusion.

The two blocks were about thirty feet apart, but within the

same inclosure. They were held in a common ownership, though by separate leases from the state. They had been used and operated together, but could be utilized separately, and had no necessary connection. Both were out of repair and required preparation and expenditure to put them in condition for use, block 23 being much the most dilapidated and in need of the most extensive repairs. The owners of the two blocks were the plaintiff and his brother, who was a lunatic and in charge of a committee of his person and estate. The Syracuse Fine Salt Company was a corporation duly organized, the ultimate purpose of which was to control the salt manufacture of the entire reservation. This was planned to be effected by leasing all the salt blocks, and operating them under one management, and so controlling the supply and preventing variation or diminution of prices. The success of the project depended upon the ability to bring all the salt blocks into the combination, and so master the market. In carrying out the plan a difficulty was encountered as to blocks 22 and 23. The plaintiff had executed a lease, but hesitated to deliver it, and placed it in escrow in the hands of an officer of the company, and to become operative only upon condition. The committee of the lunatic, without authority of the court, had executed a lease for ten years, but possession of the blocks had not been given and was withheld. In this emergency, the Fine Salt Company passed a resolution directing the defendant to take possession of blocks 22 and 23. The evidence shows that this was the only resolution of the kind passed by the corporation, and indicates the knowledge of its members that there was a difficulty to be overcome, and their determination to get possession, at all hazards, and defend it as best they could. Under this resolution the defendant acted. He so testifies. The direction was to take possession of both blocks, and what he did was adequate for that purpose and effected that precise result. He went to the inclosure and entered it. He carried with him the means of forcing the lock which he expected to encounter, and a new lock to supply its place and give him control. He

removed plaintiff's lock and put on his own. Thereafter he met Pharis at block 22, and the violence and personal struggle for possession and control, which both sides detail with but few and unimportant differences, occurred. That violence was aimed at the possession of both blocks, and secured the possession of both. The defendant testified: "It was in my mind to take possession of the blocks." Speaking of his men, he added: "I went there to see that they took and kept possession of the blocks." He told Pharis that he was not able to cope with him or the salt company "in holding on to that property." He said: "If these blocks hadn't come in there would have been no company; the company wouldn't have run if they hadn't been in." At the commencement of the personal struggle he notified the plaintiff, according to the latter's statement, that "he took possession of that block and block 23." While it is true that the violence occurred on block 22, and more than mere words are needed to make a forcible detainer, yet, where the violence was aimed at the possession of both blocks, and was employed to effect that possession, and did in the end secure it, the jury were warranted in finding a forcible detainer of the whole property within the inclosure, and it was no error that the court refused to charge the contrary.

But the reversal by the General Term is now defended upon the ground that the lease from the committee of the lunatic was valid, so far, at least, as to justify the entry of the defendant and repel the charge of a forcible detainer. It is conceded that the committee had no right to lease the interest of the lunatic by virtue of any order of the court, but it is asserted that such right existed where the term was not longer than five years, by force of the common law and the statute, and, while this lease was for ten years, it was, nevertheless, good as a lease from year to year and justified the possession taken. I am not satisfied that the committee of a lunatic ever had the common-law right which is asserted. A survey of the earlier authorities, cited quite fully upon the briefs of both parties, has led me to the conclusion that the committee of a lunatic

has no title to or interest in the latter's real estate; that he becomes its mere custodian or bailiff, and is such solely as the agent or representative of the court; and has no independent power to dispose of the real estate in any manner whatever. In substance, that, at least, is the doctrine of this court. In the *Matter of the Application of Otis* (101 N. Y. 581), it was declared that the committee had no interest in the property; that his possession was the possession of the court; and his authority that of its agent acting under its direction. The provisions of the statute in force at the time fully accord with this doctrine. (Laws of 1874, chap. 446, p. 571.) Section 1 of title 2 vests in the Supreme Court the care and custody of lunatics and their estates. The committee thus becomes merely the officer or agent of the court, and has no authority except such as comes from that source, or is vested in him by statute. If the real estate is to be sold, application must be made to the court and its order obtained. (§ 6.) If a lease is necessary to accomplish specified results, the court is expressly authorized to order it (§ 9); and all sales, leases, etc., made by the order of the court are declared to be as valid and effectual as if made by the lunatic himself. So far no authority is found for the lease of real estate except by direction of the court as custodian and trustee of the estate; and the statute not only reserves that authority to the court, but, by a very plain implication, denies its existence elsewhere. The committee is but the hand of the court, moving only as moved by the dominant will; unless by an implication derived from section 27, the hand is furnished with a brain or will of its own. That section reads: "The real estate of any idiot, lunatic or person of unsound mind, or person incapable of conducting his own affairs, in consequence of habitual drunkenness, shall not be leased for more than five years, or mortgaged or aliened or disposed of otherwise than herein directed." The respondent claims that the phrase "otherwise than herein directed." relates as well to leases for more than five years as to mortgages and sales, and so the order of the court is needed only where a lease is proposed for a longer term than five

years.  I seriously doubt that construction.  All authority to deal with the lunatic's estate had been previously vested in the court, and none outside of its direction given to the committee; and the final provision seems rather intended to prohibit, absolutely, leases for a longer period than five years, even by the order of the court, and not by a doubtful and uncertain implication to give to the committee an independent authority within that limit.  In the revision accomplished by the Code of Civil Procedure, the language was changed for some reason, about which we need not now inquire; nor is it essential even to finally determine the question of construction raised upon the terms of section 27 of the act of 1874; for what is here termed a lease of the two salt blocks, and was put in that form, was, in reality, a contract of a very different character, and going so far beyond the characteristics of an ordinary lease as to be void without the authority of the court, even if a letting, in the customary manner, for a short term, was within the independent authority of the committee.  In the guise of a lease the two salt blocks were put into a combination to control the entire manufacture, and in such manner that the rental was dependent upon the success of the enterprise, and was something or nothing as its affairs should prosper or prove unfortunate.  The lease, put in evidence, provides for the payment, by the salt company, of an annual rent of two per cent upon a valuation of the premises, to be made as thereinafter set forth, and which valuation was to be indorsed on the lease.  No such mode of valuation is described, and no such indorsement appears ever to have been made.  Upon plaintiff's lease, never becoming operative, there appears the detail of the contract actually made, which probably was common to all the owners of salt blocks, and which, perhaps, we ought to assume, was applicable to the committee's lease in order to save it from destruction, as inchoate and incomplete  That detail provided that the average value of each salt block should be $3,000; and the special value of each one separately should be fixed by eleven appraisers to be chosen by the salt company, the estimate of any eight of them to be

final.   The two per cent thus was upon a valuation to be fixed
by persons chosen wholly by the salt company, in whose selec-
tion the lessor was to have no voice, and for whose arbitrary
judgment there was to be no remedy.

If we take the average valuation, the two per cent payable,
was $60 for each block; and, since the lessors, out of this,
were to pay their own taxes and insurance, if they had any,
and take their property back with the wear and dilapidation
of a season's use, it is evident that the fixed rent was merely
nominal, and not the real consideration of the contract.   And
so there was further stipulated what was denominated a
contingent rent.   From the earnings of the salt company all
expenses of the business were to be deducted, including the
two per cent of fixed rental and interest on money borrowed
by the corporation for the purposes of its business, and from
the balance was to be first deducted ten per cent upon the
company's capital paid in or secured.   If anything then
remained it was to be divided among the block owners to the
limit of eight per cent upon their respective valuations.   If
any surplus still remained, it was to be divided *pro rata*
between capital and valuations.   It is thus apparent that, under
the form of a lease, the committee of the lunatic assumed to
put the latter's property in the complete control of a corpora-
tion, subject to its business success or failure, so far as com-
pensation was concerned, reserving, in the main, no real rent,
and even the nominal rent to be fixed by others, and contract-
ing solely for speculative results.   Whatever may be said as to
an independent power of a committee to make an ordinary
and customary lease for a short term, I have no doubt that a
contract, like the one before us, running for ten years, tying
up the lunatic's estate to the fortune of an untried experiment,
never was, either at common law or under the statute, within
the authority of a committee acting independently of the
court.   It was a lease only technically and in form.   Sub-
stantially, it was a transfer of the blocks for the period named
upon a consideration speculative, contingent and doubtful, and
making the estate a partner in a corporate enterprise, so far,

at least, as its possible profits were concerned, and periling its rental value upon the fortunes of the enterprise. The court itself might well have hesitated, had its authority been sought; but no technical argument, founded upon the form of a lease, can bring this most unusual and extraordinary contract within the independent authority of a committee. If, by possibility, the length of the term could be rejected, there would still remain the inherent character of the contract beyond the committee's authority.

A further effort to sustain the reversal of the General Term was founded upon the partition proceeding instituted by the plaintiff. The judgment in that action was not pleaded as a bar to this, nor were the parties the same. Neither the present defendant nor the salt company were parties when it was rendered, and they were in no manner bound by it. As evidence of possession by plaintiff during the alleged detainer, his complaint was admissible, but the salt company's answer alleged possession by it, and the question became one of fact upon all the evidence in the case.

Some other questions have been examined, but without enabling us to sustain the reversal.

The order of the General Term should be reversed, and that of the Circuit affirmed, with costs.

All concur, except RUGER, Ch. J., not sitting.

Order reversed and judgment affirmed.