### In re EISENBERG.

(District Court, S. D. New York.    September 24, 1902.)

1. BANKRUPTCY—PERSON ENTITLED TO BENEFIT OF STATUTE—INSANE PERSONS.
    Bankr. Act, § 4a, declares that any person who owes debts, except a
    corporation, shall be entitled to the benefits of the act, as a voluntary
    bankrupt; and section 59a provides that any qualified person may file a

---

¶ 1. What persons are subject to bankruptcy law, see note to Matoon Nat.
Bank v. First Nat. Bank, 42 C. C. A. 4.

petition to be adjudged a voluntary bankrupt. *Held* that, as an insane person is disqualified from performing the duties and assuming the burdens and obligations which accompany the benefits to be derived from the bankrupt act, he was not a qualified person, entitled to the benefits thereof.

In Bankruptcy.

Edward Kaufmann, for petitioner.
Blumenstiel & Blumenstiel, for creditors.

ADAMS, District Judge. This is the return of an order to show cause why some of the creditors of a lunatic should not be restrained from prosecuting certain actions at law now pending in the courts of the State of Maryland against the committee of the person and estate of the alleged bankrupt, wherein the sum of $800 belonging to the estate of the alleged bankrupt has been attached.

The committee, Abraham H. Eisenberg, who was appointed by order of the Supreme Court of this state on the 23rd day of July, 1902, filed the petition in bankruptcy on behalf of the lunatic, and an ex parte adjudication made in the ordinary course, but now the attaching creditors appear specially and claim that the court did not have jurisdiction to entertain the petition and make the adjudication.

The question presented is apparently a novel one, no authorities having been found which pass upon it. No direct provisions were made in the Act for proceedings by or against lunatics excepting under section 8 where it is provided that the death or insanity of a bankrupt shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died or become insane.

It is provided in section 4a, that any person who owes debts, except a corporation, shall be entitled to the benefits of the Act as a voluntary bankrupt, and such general language would seemingly include the case of a lunatic, but a later section (section 59a) provides that any qualified person may file a petition to be adjudged a voluntary bankrupt, and the broad language of the earlier section is thus limited in a manner which would apparently exclude a lunatic, who manifestly is not qualified to perform the duties and assume the burdens and obligations, which accompany the benefits to be derived from the Act. For example, a primary requisite on the part of those seeking the aid of the Act is their willingness and ability to surrender all their property for the benefit of their creditors and it would be obviously impossible for a person non compos mentis to make a valid surrender. And it would be equally impossible for his committee in this case to make such a surrender because the title, under the laws of New York, remains in the lunatic, the committee being merely a bailiff to take charge of the lunatic's property and administer it subject to the direction of the court appointing him. In re Otis, 101 N. Y. 580, 5 N. E. 571; Pharis v. Gere, 110 N. Y. 336, 18 N. E. 135, 1 L. R. A. 270; In re Strasburger, 132 N. Y. 128, 30 N. E. 379; Kent v. West, 33 App. Div. 112, 53 N. Y. Supp. 244. The lunatic, moreover, evidently could not perform the duties devolved upon him by section 7 of the Act, nor be subjected to ne exeat or

contempt proceedings, and the committee obviously could not properly be substituted for him in any of these or other matters which would demand the personal attention or responsibility of a bankrupt.

In the English Bankruptcy Acts, special provisions have been made with respect to proceedings involving the estates of lunatics, yet the administration of the law has been beset with difficulties and doubts still exist with respect to the validity of adjudications against lunatics. Williams, Bankr. Prac. (7th Ed.) pp. 5, 61, 350, 370, 440, 457, 458. In Re Farnham [1895] 2 Ch. Div. 799, decided in 1895, it was assumed, for the purpose of disposing of a property question, that the lunatic had been validly adjudicated a bankrupt. That was an involuntary case in which an adjudication was made after the lunacy was found by inquisition. In considering the matter, the court said that the trustee in bankruptcy took the estate subject to the powers of the judge in Lunacy under the Lunacy Act of 1890. That Act conferred upon the judge similar powers with respect to the lunatic's estate to those conferred by statute upon the Supreme Court of this state, which appointed this committee and, by analogy, as the property here remained in the possession of the Supreme Court of the state and the committee was only its agent, not the agent of the lunatic, no proper action could, in any event, be taken without that court's direction, which would defeat this committee's action. I do not think, however, that the decision need rest upon the absence of such direction.

It must be assumed that Congress was familiar with the difficulties that would be encountered by the courts in attempting to administer in bankruptcy the affairs of lunatics and did not intend to include cases other than those mentioned in section 8 where provision is made for the continuance and settlement of estates of which the courts had acquired jurisdiction before the insanity occurred.

I conclude that the court did not obtain jurisdiction in this matter and that the adjudication must be set aside and the motion for the restraining order denied.