PERRY PHILLIPS, GUARDIAN, v. W. S. HERNDON ET AL.

No. 2878.

1. **Variance—Warranty.**—A title bond was declared on as obliging the maker to convey the land "in fee simple by warranty deed." The bond offered recited that he would convey it "by a good and valid deed or deeds in common form." Objections to the testimony for variance were improperly sustained. A good and valid deed in common form is equivalent to a warranty deed.

2. **Damages for Willfully Refusing to Comply with Title Bond.**—Where a vendor willfully puts it out of his power to comply with his bond to make title when the purchase money is paid, the measure of damages is the value of the land at the time the vendor sold the land to another taking title by being an innocent purchaser. Testimony to such value was improperly excluded.

3. **Minors, Rights of—Declarations.**—In a suit by a guardian of minors, orphan children of the vendee, after the death of both parents, against the vendor, negotiations between the vendor and the grandfather of the minors having the care of them can not affect their rights as heirs of their parents. Testimony to such declarations is incompetent.

4. **Revocation of Contract for Sale of Land.**—In an executory contract for sale of land, when the vendee has paid part of the purchase money, the vendor must give the vendee notice before revoking the contract.

5. **Same—Minors.**—Where the vendee in an executory contract for purchase of land has paid part of the purchase money and dies leaving minor children, there is no one to whom notice of revocation by the vendor can be given—they having no guardian.

6. **Application of Payments.**—A debtor has the right to appropriate payments, and if he does not the creditor may do so. And when neither appropriates them the law will make the application according to the justice of the case. A creditor can not make such application as would under the circumstances be inequitable or unjust to the debtor. See example

APPEAL from Smith. Tried below before Hon. Felix J. McCord. The opinion gives a statement.

*White & Edwards,* for appellant.— 1. The court erred in excluding

as evidence the bond for title.    McClelland v. Smith, 3 Texas, 210; Vardeman v. Lawson, 17 Texas, 10;  Gregory v. Hughes, 20 Texas, 345.

2.    The court erred in excluding the evidence offered by plaintiff to prove the value of the land in controversy at the time defendant Allen took possession of the same, said evidence being pertinent; the plaintiff having alleged the value of said land and prayed for a judgment for its value in case he should fail to recover the specific land itself.

3.    The court erred in admitting, over objection of plaintiff, the evidence offered by defendants as to transactions and conversations had by defendant Herndon with Perry Phillips and Polly Phillips in the year 1883. Rainey v. Chambers, 56 Texas, 17.

4.    If payment for one tract of land has been made in full, appellant's wards should recover for that tract; and if the proof does not show positively that all the payments made by their ancestor were actually applied so as to make full payment for that tract, yet if the payments actually so applied were almost sufficient to liquidate the debt, equity will apply other payments made to liquidate the debt, especially if the vendee remained for a long time in possession of the land without complaint from the vendor.

*George H. Gould* and *W. S. Herndon,* for appellees.— 1.  The two bonds offered in evidence were properly excluded on the ground of variance between the averments in the petition and the evidence offered.   Shipman v. Fulcrod, 42 Texas, 248; Brinkley v. Harkins, 48 Texas, 225;  Heilbroner v. Hancock, 33 Texas, 714; Denison v. League, 16 Texas, 399; Parker v. Beavers, 19 Texas, 406; Jones v. Jones, 49 Texas, 683; Tumlinson v. York, 20 Texas, 694; Whiteman v. Castleberry, 8 Texas, 441; Lander v. Rounsaville, 12 Texas, 195; Ransom v. Brown, 63 Texas, 188.

2.    The evidence to prove the value of the land at the time it was sold by Herndon to Allen, December 10, 1887, was properly excluded.   Ransom v. Brown, 63 Texas, 188;  Tumlinson v. York, 20 Texas, 694; Whiteman v. Castleberry, 8 Texas, 441.

3.    The complaint that the court ought to have excluded the evidence concerning the transactions between Herndon and Perry Phillips in 1883 is not well taken.

ACKER, PRESIDING JUDGE.—On the 15th day of September, 1875, W. S. Herndon sold to James Moseley five acres of land for the consideration of $100 in gold, for which Moseley executed his promissory note bearing interest from that date at 10 per cent per annum and payable on the 1st day of January, 1876, and also paid to Herndon $30 in currency, for which Herndon executed his receipt, to be credited on Moseley's note at its value in gold.  Herndon executed and delivered to Moseley a bond for title in the usual form, and Moseley went into possession, built a house

upon the land, and resided there with his family until his death in November, 1881.

In addition to the $30 currency paid by Moseley at the time of his purchase, he made the following payments to Herndon: On the 21st day of November, 1877, Herndon receipted him for. "$20 to be credited on his land note." On the 1st day of December, 1877, $30 in currency, which was receipted for, to be credited on the note. On December 17, 1878, Herndon made a statement showing balance of $46.90 due him by Moseley, and on that day he credited the statement with the sum of $30 then paid by Moseley, reducing the balance due to $16.90.

On the 14th day of January, 1879, Herndon sold to Moseley another tract of five and eight-tenths acres of land for the consideration of $100 in gold, for which Moseley executed his promissory note, due at one day after date, with interest from date at 10 per cent per annum, and Herndon executed and delivered his bond for title to Moseley, and Moseley took possession of this tract also. On the 4th day of October, 1881, Moseley paid Herndon $18, and on the 1st day of December, 1882, Herndon collected $35 due to Moseley for a pony he had sold in 1881.

When Moseley died in November, 1881, he left a wife and four minor children living on the land. His wife died in June, 1882, and her parents, Perry and Polly Phillips, took charge of the children and removed them from the land to their home to care for them, and took possession of the land.

On October 15, 1883, Herndon made a statement to Phillips and wife showing balance of $173.75 due him on the two sales made to Moseley, and on that day Herndon endorsed on each of the bonds for title that the sales made to Moseley were canceled, and that he had that day sold the lands to Perry Phillips for the consideration of $173.75, upon which Phillips then paid him $3.75.

On the 10th day of December, 1887, Herndon sold the lands to F. R. Allen, who took possession thereof.

Perry Phillips qualified as guardian of the minor children of James Moseley, and as such brought this suit on the 27th day of April, 1888, against Herndon and Allen for specific performance of the contracts made by Herndon with Moseley, alleging payment of the purchase money by Moseley, or to recover the value of the land from Herndon if it was found that Allen was a good faith purchaser from Herndon, and alleged that the value of the land was $150 per acre at the time Herndon sold to Allen. Plaintiff also prayed for general relief.

The defendants answered general denial, limitation, and pleaded cancellation of the sales to Moseley for failure to pay purchase money. Allen pleaded that he was an innocent purchaser.

The trial without a jury resulted in judgment for the defendants, and plaintiff appealed.

The plaintiff offered in evidence the bonds for title, to which the defendants objected "for the reason that the same varied from and did not correspond with the allegations of the petition."

The objections were sustained, and the first and second assignments of error relate to these rulings.

The allegations of the petition descriptive of the bonds are as follows: "That on said 15th day of September, 1875, said W. S. Herndon, being desirous of disposing of said above described land, entered into an agreement with James Moseley, the ancestor of plaintiff's said wards, for the sale of said lands to him, the said James Moseley, which agreement was reduced to writing and signed by said W. S. Herndon and delivered on the day it bears date, to-wit, on September 15, 1875, wherein said Herndon stipulated and agreed with said Moseley to convey to him said above described tract of land in fee simple by warranty deed upon payment of a promissory note executed on said September 15, 1875, by said James Moseley for one hundred gold dollars with 10 per cent interest from date, due at Tyler, Texas, on January 1, 1876."

The bond of date January 14, 1879, was described in substantially the same way. The objection does not designate in what the alleged variance consists, and we are unable to discover it.

It is alleged that Herndon obligated himself to convey the land "in fee simple by warranty deed," while the bonds offered in evidence recite that he would convey the lands "by a good and valid deed or deeds in common form," but this constitutes no variance, for an obligation to make "a good and valid deed in common form" binds the obligor to execute a warranty deed, and the petition correctly declared the legal effect of Herndon's obligations. Vardeman v. Lawson, 17 Texas, 11.

It is true that it appears from the bill of exceptions that the bond of September 15, 1875, described the note given by Moseley of that date as maturing January 1, 1879, instead of January 1, 1876, as alleged in the petition, but the receipt given by Herndon for the $30 paid by Moseley on the day of the date of both the bond and note recites that the note matured on the 1st day of January, 1876. Herndon testified that it became due on that date, and indeed all of the evidence upon that point went to show that the note of September 15, 1875, matured January 1, 1876, as alleged in the petition. We therefore conclude that "1879" written in the bill of exceptions is a clerical error, and that there is no variance between the allegations and evidence offered.

We think the first and second assignments of error are well taken, and that the court erred in excluding the bonds.

The third assignment of error is, "The court erred in excluding the evidence offered by plaintiff to prove the value of the land at the time defendant Allen took possession of it, said evidence being pertinent, and

plaintiff having alleged the value of said land and prayed for judgment for said value in case he should fail to recover the specific land itself."

There were two separate and entirely distinct contracts entered into between Herndon and Moseley, either of which Moseley had the right to enforce specific performance of as against Herndon upon proof of performance by Moseley of his part of the contract. If after performance by Moseley, Herndon by his voluntary act placed it beyond his power to make title to the land as stipulated in his bond, he thereby became liable to Moseley for such damages as were the direct and natural result of his failure to comply with his obligations. There has been much contrariety in the decisions of the courts as to the correct measure of damages in such cases, but we believe that equity and the weight of authority sustains the view that in executory contracts of the character involved in this case adequate compensation for the injury done should be recoverable where the vendor by his voluntary act deprives himself of the ability to perform his contract.

We are aware that the case of Hall v. York, 22 Texas, 643, following Sutton v. Page, 4 Texas, 142, seems to hold the contrary doctrine, for it is there said "that where the vendor of land is not able to make title the vendee's measure of damages is the purchase money and interest, and nothing more." But that case, like the case of Sutton v. Page, was not a suit for specific performance or to recover damages for breach of trust by the vendor. Hall v. York was a suit to recover the penalty fixed by the bond for title, which was a much larger sum than the money paid, and like the case of Sutton v. Page was simply an action on the personal covenant in the bond. In both of those cases it was held that the measure of damages was the money paid, with interest, unless other damages are specially alleged and proved. We do not think those cases are analogous to this.

In the case of Hopkins v. Lee, 6 Wheaton (U. S.), 109, the court said: "The rule is settled in this court that in an action by the vendee for a breach of contract on the part of the vendor for not delivering the article, the measure of damages is its price at the time of the breach. The price being settled by the contract, which is generally the case, makes no difference, nor ought it to make any; otherwise the vendor, if the article has risen in value, would always have it in his power to discharge himself from his contract and put the enhanced value in his own pocket; nor can it make any difference in principle whether the contract be for real or personal property, if the lands, as is the case here, have not been improved nor built on. In both cases the vendee is entitled to have the thing agreed for at the contract price, and to sell it himself at its increased value." See also Kirkpatrick v. Downing, 58 Mo., 32.

In this case plaintiff did not seek to recover anything for improvements put upon the land, but only the value of it at the time of its appropria-

tion by Herndon, in the event specific performance could not be had. The land was sold by Herndon to Moseley at $20 per acre, and the petition alleged it to be of the value of $150 per acre at the time it was sold by Herndon to Allen.

If Moseley fully performed his part of either of the contracts by paying the purchase money, the superior equitable title vested in him and Herndon held the legal title in trust for him, and upon breach of that trust by voluntary conveyance of the legal title to another Herndon became liable to Moseley for such damages as resulted directly therefrom, we think certainly to the extent of the value of the land at the time it was so appropriated, and we think the court erred in excluding the evidence offered to prove such value.

The fourth assignment of error is, "The court erred in admitting, over objection of plaintiff, the evidence offered by defendants as to transactions and conversations had by defendant Herndon with Perry Phillips and Polly Phillips in the year 1883, as shown by plaintiff's bill of exceptions No. 4."

The objection to this evidence was upon the ground that "it was immaterial, and could not affect the rights of plaintiff's wards."

We think the objection was good, and should have been sustained. When Moseley died, whatever rights and interest he had in the land descended to and vested absolutely in his widow and minor children. At the time of the transactions between Herndon and Perry Phillips and his wife, in 1883, Moseley's widow was also dead, and the minor children alone owned whatever interest their parents had acquired in the land. There was no one authorized to bind them or affect their interest by any agreement, and their rights were not affected by the transactions between Herndon and their grandparents, Perry and Polly Phillips.

The fifth assignment of error is, "The court erred in rendering judgment for defendants and in not rendering judgment for plaintiff, it being shown that at least the five acres of land bargained for by James Moseley on September 15, 1875, had been fully paid for, and that F. R. Allen was not a purchaser in good faith."

The court found as a conclusion of law that "the plaintiff has mistaken his remedy; the land having been sold to Allen by Herndon without notice, plaintiff can not recover the land or its value, but his recovery would be the penalty on the bond, to-wit, $100 with interest."

From what we have already said it will be seen that we understand this suit to be on the bonds for specific performance only in the first instance, and secondarily against Herndon to recover damages for breach of trust in voluntarily transferring the legal title to Allen, and thus placing it beyond his power to perform his contract after the superior equitable title had vested in Moseley by payment of the purchase money. We see no reason why the plaintiff can not maintain the suit in this way. If Allen

was an innocent purchaser, then specific performance could not be decreed against Herndon; and if the superior title had vested in Moseley the plaintiff could either sue upon the bond for purchase money paid and interest or bring his suit, as we understand him to have done, to recover damages against Herndon for breach of trust.

Herndon having received from Moseley at least a part of the purchase money for the lands, and Moseley having taken possession under his contracts of purchase, Herndon could not rescind the sales to him without notice of his intention to do so; and Herndon having received payments on the purchase money after default by Moseley in failing to pay the purchase money notes at maturity, he thereby waived his right of rescission. Kennedy v. Embry, 72 Texas, 390; Moore v. Geisicke, 76 Texas, 548; Tom v. Wollhoeffer, 61 Texas, 281.

At the time Herndon attempted to rescind the sales to Moseley, after the death of both Moseley and his wife, there was no one to whom notice of his intention to rescind could be given, and there was therefore no rescission effected.

Herndon testified, without objection, that "about July 23, 1881, Moseley and myself had a settlement of all matters between us; he had done work for me and I had advanced considerable money to pay his hands and for supplies, and he fell in my debt $183.    This was then treated by Moseley and myself as balance due me." ·

In regard to the $18 paid by Moseley to Herndon on October 4, 1881, Herndon testified "that in the fall of 1881, I think, I let him have some money, but how much I can not say.   He was to settle it out of his service upon the railroad, but died and failed to pay anything except the $18 October 4, 1881; this may or may not have settled the small amounts I let him have after July 23, 1881, but I can not say."

Herndon also testified that "some time before Moseley died he sent me a note that he had sold the pony to Schoof for $35, and to please collect the amount and give him credit on the debts he owed me."

There was no other evidence bearing upon the question of appropriation of the money received by Herndon from Moseley after the second bond for title was executed, at which time, according to the statement made by Herndon on the 17th of December, 1878, Moseley owed him a balance of $16.90 on the first purchase, after having paid him $110, $30 of which was paid at the time of the purchase.

In respect to the appropriation of payments made by a debtor to a creditor who holds more than one debt against him, the general rule is that a debtor has the right to appropriate payments, and if he does not, the creditor may do so, and when neither appropriates them the law will make the application according to the justice of the case.   Matossy v. Frosh, 9 Texas, 612.

In Stanley v. Westrop, 16 Texas, 206, it is said:   "It is admitted on

all hands that the debtor has the absolute right to make the application if he sees proper to exercise it.   If he omits to do so, and it is left to the law to make it for him, it ought, it would seem, to be made in accordance with the presumed intention of the debtor."   And we think it must be presumed that the debtor intended to apply it to the debt that would be most beneficial to him.

In Taylor v. Coleman, 20 Texas, 772, it is said:   "The debtor having at the time of the sales made no specific designation of the proceeds, the plaintiffs were left to their election to apply the payment.   But this did not vest them with the power to act capriciously, or to make such designation as would unreasonably operate to the prejudice of the defendant. At the civil law the creditor must regard himself as standing in the shoes of the debtor, and apply the payments to such debts as the debtor himself would have first discharged.   But without affirming the principle to this extent, it is the rule of the common law that the creditor can not make such application as would, under the circumstances, be inequitable and unjust to the debtor."   See also Bray v. Crain, 59 Texas, 649.

Applying the rules and principles announced in the foregoing decisions to this case, we think the $18 paid by Moseley on the 4th day of October, 1881, should have been applied to the payment of the balance of $16.90 claimed by Herndon to be due on the first contract (especially so as it does not appear from the evidence what application Herndon made of it), and thereby perfect Moseley's title to the five acres first purchased.   If the $18 was insufficient to pay the balance of $16.90, then so much of the $35 received by Herndon after Moseley's death as was necessary to pay off the balance of the $16.90 should be so applied.   At the time Herndon received the $35 Moseley was dead and could not direct its application. The law applied it for him to the liquidation of any balance that might be due on the purchase money for the five acres first purchased, and upon which he had established the home for himself and family.

We are of opinion that the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted November 11, 1890.