[Civ. No. 8655. Second Appellate District, Division One.—May 28, 1935.]

JAMES HOLDEN (a Minor), etc., Respondent, v. PATTEN-BLINN LUMBER CO. (a Corporation) et al., Appellants.

Dana R. Weller for Appellants.

David L. Sefman, Rowland Fontana and Ernest M. Torchia for Respondent.

ROTH, J., *pro tem.*—Respondent, a minor, by his guardian *ad litem,* brought suit for damages sustained as the result of personal injuries suffered when struck by an automobile owned by appellant Lumber Company and operated by one of its employees. The accident occurred on July 25, 1922, when plaintiff was three and one-half years old. This suit was filed January 8, 1932, approximately ten years later.

Appellants concede the rule that an appellate court cannot disturb a judgment rendered on conflicting evidence and also that the credibility of the witnesses must be determined by the trial court or jury, but insist that because of "the lapse of time intervening between the accident and the trial, and the interest of the witnesses testifying for plaintiff, a more than ordinary scrutiny should be given to such testimony and the statements of disinterested witnesses accorded their full reasonable value". Feeling that the request and suggestion of appellants is a fair and reasonable one, we have religiously scrutinized the record and find that the only witness who can be said to be interested, in a legal sense, who testified for respondent on the facts of the accident, was his grandfather, an eye-witness. As to the physical condition of the child before and after the accident, his mother testified. This testimony, in so far as it described the child's physical condition after the accident and his physical condition at the

time of trial, was amply supported by the testimony of three doctors who cared for the child. While it may be said in a colloquial sense that the doctors were interested, they cannot be said to be interested witnesses in a legal sense and their testimony, with the exception of a description of and an opinion as to the amount of pain suffered or likely to be suffered, is of a professional, factual nature, corroborated by hospital records.

 Disregarding the testimony of the child's grandfather, the preponderance of the evidence shows that a three and a half year old child had stepped off the curb and was walking east approximately 60 to 80 feet south of the intersection of Sixteenth and New Hampshire Streets in the city of Los Angeles and had taken at least two or three steps into New Hampshire Street when a Ford touring car owned by appellant Lumber Company and operated by one of its employees, appellant Haskins, proceeding in a southerly direction, was at a point north of the northerly curb line of Sixteenth Street and continued at a speed of 20 to 30 miles per hour across the intersection and to the point in the street where the child was walking, the right fender or right portion of the bumper of the Ford touring car striking the child at an undetermined point between the west curb of New Hampshire and what would be the center line of the street. One eye-witness (called by the defense) testified: ''I believe the man tried to avoid hitting the child because he swerved out that way.'' The driver of appellant's car testified: ''The first time I saw the boy he was on the sidewalk. I don't know whether he was moving or standing still. . . . I don't know how far I was from the boy when I first observed him. I paid no more attention to him.'' One Segner, a witness for respondent, testified, according to a summary of his testimony made in appellants' brief: ''I don't know exactly where the boy was in the street when he was struck. I know he was some place in the street. I seen him walk off the curb, and he had taken several steps off the curb. I saw him step down from the curb; that is when I first saw him. I did not observe the automobile at the time I saw him step down. The boy had advanced 2 or 3 steps, perhaps more than that, when I first saw the automobile out of the corner of my eye. I just saw a flash of the automobile as it crossed the northerly intersection of New Hampshire Street. I saw the automobile

strike the boy—the front right of the automobile struck him. I am not sure whether it was the fender, the wheel or the bumper. I really don't know. In my opinion the automobile was traveling more than 25 miles an hour.'' One Styers, a witness called by appellants, testified: ''Q. Now the car passed in front of you, did it? A. Yes, he came on out past here, and I had to come to a complete stop for him to pass, Judge, because I thought I had the right of way I was going on, I was going about 25 or 30 miles an hour, and I came to a complete stop and he shot in front of me and came across here, and I came to a complete stop. I think I was talking to my wife about it, because it made me angry because he took the right of way from me, Judge, and I watched him out of here. Right about in here is where it struck this little baby.'' Anna Styers, wife of the foregoing witness, also called by appellants, testified: ''We were driving about 20 or 25 or 30 miles an hour and this car shot across New Hampshire going south on New Hampshire, past 16th Street about 25 miles an hour, I imagine, and Mr. Styers was very much provoked, he had to put the brakes on to stop, because this chap took the right of way, and we were watching the car there because he was going so fast, and we saw him when he hit the child.''

From the scant *résumé* of testimony which has been given it must be clear that the conflict of the testimony was such that the verdict of the jury cannot be disturbed. As is said in the case of *Morris* v. *Standard Oil Co.*, 188 Cal. 468, 471 [205 Pac. 1073] : ''In the character of cases here involved, where there is a conflict regarding the exact point or the precise manner of contact, it is not the province of the appellate court to review the conclusion reached by the judge or jury upon such testimony, if there be any rational basis for the verdict, and a finding regarding such negligence will not be disturbed on appeal. (*Whitelaw* v. *McGilliard,* 179 Cal. 349 [176 Pac. 679] ; . . . *Brimberry* v. *Dudfield Lumber Co.*, 183 Cal. 454 [191 Pac. 894]. . . . )''

The jury brought in a general verdict for $22,500. Judgment was entered thereon. A motion for a new trial was made and denied. One of the grounds urged on the motion for a new trial was excessive damages. Appellants reassert this point now.

The rule followed by appellate courts when an appeal is on the ground that excessive damages have been given as a result of passion or prejudice is well stated in the case of *Morris* v. *Standard Oil Co., supra,* page 473, the court saying:

"The question of excessive damages is one that is first addressed to the trial court. Practically, the trial court must bear the whole responsibility in every case. The power of appellate courts over excessive damages exists only when the facts are such as to suggest, at first blush, passion, prejudice or corruption on the part of the jury. (*Bond* v. *United Railroads,* 159 Cal. 270–286 [113 Pac. 366, Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687] ; . . . *Hale* v. *San Bernardino, etc. Co.,* 156 Cal. 713 [106 Pac. 83] ; . . . *Bisinger* v. *Sacramento Lodge, etc.,* 187 Cal. 578 [203 Pac. 768]. . . . )" (*Holmes* v. *California Crushed Fruit Co.,* 69 Cal. App. 779 [232 Pac. 178] ; *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237 [116 Pac. 513] ; *Kelley* v. *Hodge Transportation System,* 197 Cal. 598 [242 Pac. 76] ; *Campbell* v. *Bradbury,* 179 Cal. 364, 375 [176 Pac. 685] ; *Wallace* v. *Pacific Electric Ry. Co.,* 105 Cal. App. 664 [288 Pac. 834] ; *Rannard* v. *Harris,* 113 Cal. App. 15 [297 Pac. 623].)

The evidence shows that respondent suffered a definite injury to the bones of his neck that caused an injury to the roots of the nerves as they come out of the neck, causing a disturbance and partial paralysis with a contraction deformity of the left arm, and an impacted fracture of the vertebrae; that the injuries to the left arm caused a permanent disability with reference to the bending or straightening out of the same; that there was a further deformity and injury to the elbow and wrist of the left arm; that there was a definite limitation of motion in the neck, with regard to the permanency of which one of the doctors testified:

"I don't think it ever will be—ever be back to normal entirely; I think it is permanent. But in my work you have to be an eternal optimist, and I feel that he will get some improvement, although I make that statement saying that I am somewhat optimistic in that. I have seen them get better by long continued effort, but it will take long continued work on his part; these joints have been damaged, and a damaged joint by long continued stretching and exercise may be improved somewhat, how much I don't think anyone can say."

One of the other doctors testified:

"Q. Now, what do you think about the permanency of the present condition, whether it is going to be a permanent condition? A. In my opinion the injury to this little boy's neck and his elbow are both of a permanent character."

As to whether or not the respondent underwent more than a usual amount of pain and suffering, the following excerpts from the testimony of one of the doctors are fair illustrations:

"The boy was placed in a plaster cast, a tremendous body plaster cast, involving the neck and the head, and the left arm was similarly treated with plaster of paris in order to immobilize it, so-called, keep it quiet. This was allowed to remain on for several months and then a brace, a body brace with a tremendous collar made of leather and steel was substituted for the plaster of paris. . . . Q. Do you know how long he was kept in that brace? A. Several months, I don't know exactly."

Our attention has been called to no evidence which supports the contention of appellant that the physical condition of respondent was not caused by the injuries received in the accident. All of the doctors who testified for respondent were of a contrary opinion and no evidence has been directed to our attention by appellant which supports this contention. One of the doctors testified: "The absence of tuberculosis was conclusively proved during his months of observation in the hospital."

Finally, complaint is made that the court erred in sustaining an objection to questions sought to elicit evidence as to what one of the witnesses heard Mr. and Mrs. Niendorf, the maternal grandparents of respondent, say with reference to the accident. We believe the objection was properly sustained. Respondent was not present at the time and could not be bound by the declarations of his parents or grandparents. (1 R. C. L. 482, sec. 18; *Phillips* v. *Herndon*, 78 Tex. 378 [14 S. W. 857, 22 Am. St. Rep. 59] ; *Norfolk & W. R. Co.* v. *Groseclose's Admr.*, 88 Va. 267 [13 S. E. 454, 29 Am. St. Rep. 718].) In any event, no offer of proof was made and it is not possible to determine what appellants expected to prove by such questions. It also is clear from the appellants' brief that the proposed evidence was in the nature of im-

peachment, and it is not shown that any foundation was laid therefor. Under the circumstances, we could not say, even though the evidence was improperly excluded, that there has been a miscarriage of justice by reason of the fact that objection to appellants' questions was sustained.

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.