John **ALEXANDER** and Annie Alexander, Plaintiffs-Appellees,

v.

**NASH–KELVINATOR CORPORATION,** Defendant-Appellant.

No. 215, Docket 24807.

United States Court of Appeals Second Circuit.

Argued April 8 and 9, 1958.

Decided Nov. 12, 1958.

On Motion to Clarify Dec. 8, 1958.

---

8.  11 U.S.C.A. § 110, sub. c.

9.  Porter v. Searle, 10 Cir., 228 F.2d 748, 750.

Eugene A. Sherpick, New York City (Pokorny, Schrenzel & Pokorny, Ralph Stout, William A. Blank, Brooklyn, N. Y., on the brief), for plaintiffs-appellees.

Edmund F. Lamb, New York City (Arthur V. Lynch, Sullivan & Cromwell, Purdy, Lamb & Catoggio, New York City, on the brief), for defendant-appellant.

Before SWAN, HINCKS and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Nash-Kelvinator Corporation, defendant below (referred to as "Nash"), appeals from a judgment entered against it in the District Court for the Eastern District of New York after a trial without a jury in favor of the plaintiff Annie Alexander for the sum of $165,000 and in favor of the plaintiff John Alexander for the sum of $47,000. The case was tried in two parts. The first part was devoted to the taking of proof on the subject of liability; the second part relating to damages was heard approximately one week after the trial court found in plaintiffs' favor on the issue of liability.

The facts briefly stated show that plaintiff John Alexander, on or about November 7, 1949, purchased a 1950 sedan automobile manufactured by Nash. The car was purchased from Charles Kreisler, Inc. (referred to as "Kreisler"), an independent but "authorized dealer" for Nash automobiles. From the moment Alexander took delivery on November 7, he had difficulty in steering the car. Turning the wheel to the right, he found that there was an excessive amount of play before steering action took effect; when attempting to turn to the left the steering mechanism was so stiff that he was unable to make a full turn without backing and going forward. On one occasion the steering wheel froze completely. Alexander complained to Kreisler of these steering conditions on several occasions but was advised that the car undoubtedly was stiff because it was new and that he should keep driving it.

On the day of the accident, November 24, 1949, Alexander was returning to New York from Philadelphia with his wife and granddaughter. As they were traveling through Morrisville, Pa., at about 25 miles an hour without warning the car suddenly veered to the left at a 45 degree angle and in approximately one second crashed into a large tree which was close to the lefthand curb. Alexander had tried to turn the steering wheel to the right to avoid the collision but found it locked. He then heard a loud click and the steering wheel swung freely in his hand, although it was still attached to the steering post. He was unable to apply his brakes in the time available and the left front side of the car struck the tree with such force that Alexander and his wife, Annie were seriously injured.

The principal physical evidence before the trial court consisted of a part of the steering post, together with a gear housing which contained a worm gear and a sector gear. These parts were removed from the car and were examined at the New York Testing Laboratories and by expert witnesses for both sides before and during the trial.

Plaintiffs contended, and the trial court found, that "The sector gear was misaligned on the worm in the housing of the steering chuck * * *" (Finding 21); that "The mechanical stops, if present and properly adjusted on the steering linkage, would have prevented and corrected overtravelling of the sector gear on the worm and would have prevented

it from being disengaged * * *" (Finding 22); and that "At the time of the accident, as a result of the faulty construction, manufacture and assembly of the car at defendant's plant, the sector gear had overtravelled and become disengaged from the worm and the front wheels were caused to suddenly veer to the left and the steering wheel was caused to become disengaged from the steering mechanism, all of which brought about the accident" (Finding 36).

Many of the findings of fact which attempt to attribute a definite mechanical cause to the malfunctioning of the steering apparatus are either based upon conjecture or are without adequate supporting proof. This situation is not surprising because no one will ever know with certainty exactly what happened. The steering mechanism was purchased by Nash from an independent and reliable manufacturer. Nash installed the mechanism at its factory. All that the experts had before them was the steering mechanism after the accident and the most that they could supply was opinion evidence from the actual pieces of machinery examined by them. Nevertheless, there was sufficient proof from which they could hazard an opinion as to the proper or improper alignment of the various parts by which the front wheels of the car were supposed to be turned when the steering wheel was turned by the driver of the car. However, in arriving at a decision it is unnecessary to speculate as to the mechanical aspects of the case in order to determine the question of liability. Whatever may have been the precise mechanical cause there was ample evidence which, if believed, showed that the steering apparatus did not function properly when the automobile was received by Alexander. And if the trier believed Alexander and his witnesses, there was evidence from which it might reasonably have inferred, notwithstanding some evidence to the contrary, that the mechanical cause of the defective functioning of the steering mechanism came into existence before, and not after, the automobile was delivered by the defendant to Kreisler and could readily have been detected by a simple driving test before leaving the manufacturer's possession.

Defendant argues that the physical evidence, namely the condition of the steering mechanism, precludes a finding that the plaintiffs' injuries were caused by any negligence of Nash; that Nash is not liable because it purchased the steering apparatus from a reliable manufacturer; that plaintiff's knowledge that the steering mechanism was defective and his continued driving despite this knowledge precludes liability on Nash's part; that plaintiffs voluntarily assumed the risk of driving a defective automobile; and that the doctrine of MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, is not applicable where the purchaser has knowledge of the defective condition.

■ Attempting to avoid the doctrine of MacPherson v. Buick Motor Co. which is accepted in Pennsylvania, Foley v. Pittsburgh-Des Moines Co., 1949, 363 Pa. 1, 68 A.2d 517; Krisovich v. John Booth, Inc., 1956, 181 Pa.Super. 5, 121 A.2d 890, and upon which plaintiffs' theory of liability is based, appellant argues that Alexander's own testimony about the troubles he had in steering his car, specifically his inability to turn more than about a quarter turn to the left, shows that he was aware of the dangerous nature of the car. He explained that he continued to drive the car only because he was so instructed by one of Kreisler's employees. This argument would be more persuasive if the accident had occurred due to Alexander's inability to make a full left turn out of the way of danger. As it happened, the car turned left when it should not have turned at all. There is no prior history of such behavior, and the Alexanders were victims of a latent defect of which they had no warning.

■ When a manufacturer sends a defective car from its plant it does not become insulated from liability merely because the dealer before resale had an opportunity to inspect the car and did not (Pierce v. Ford Motor Co., 4 Cir.,

1951, 190 F.2d 910). This principle is well stated in Foley v. Pittsburgh-Des Moines Co., supra, as follows [363 Pa. 1, 68 A.2d 529.]: "A negligent defendant can not escape liability because of a failure on the part of some third person to perform an affirmative duty which, if properly performed, would have enabled the plaintiff to avoid the risk created by the defendant's negligence. The failure of the other to inspect adequately may make him liable to the party harmed, but it will not relieve the defendant whose negligence was responsible for the hazard in the first place." See also Anderson v. Linton, 7 Cir., 1949, 178 F.2d 304. The Restatement of Torts, Section 396, Illustration 1, reaches a similar result:

"1. The A Motor Company sells to B a car, the steering gear of which is so negligently constructed as to make the car unsafe to drive. B makes a business of renting cars to be driven by the renter on short trips. The defect is discoverable by an inspection which B is under a duty to make (see § 408), but not by any inspection required of a person so renting cars. B rents the car to C without inspecting it. While C is carefully driving the car he collides with the car of D. The collision is due to the bad condition of the steering gear. C, D and E, a guest in C's car, are hurt. C, D and E can recover against either the A Motor Company or B."

However, it is unnecessary to resolve the question whether the defect was "latent" or not so far as plaintiffs' right to recover against Nash is concerned because there is sufficient evidence to support the trial court's conclusions of law upon which liability is premised, well summarized in Conclusion III(A 17):

"Reasonable care in the construction, manufacture and assembly of the said car would have avoided the faults and defects and reasonable care in the inspection and tests of the car, before it left defendant's plant, would have disclosed the faulty and defective conditions that existed. The defendant failed to exercise such reasonable care."

A far more serious problem is presented as to damages. The trial court merely made blanket awards of $165,000 in favor of Annie Alexander and $45,000, exclusive of $2,000 property damage, in favor of John Alexander. The appellant contends that these awards are grossly excessive.

The special damages established were comparatively small in relation to the aggregate judgment. Therefore, other factors must have entered into the large awards totaling $212,000. The findings required under Fed.Rules Civ. Proc. Rule 52(a), 28 U.S.C.A., including those made as to damages, must "be made with sufficient particularity so that they may be reviewed." Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 752, 100 L.Ed. 1065. See also O'Connor v. United States, 2 Cir., 1957, 251 F.2d 939, 943. The findings below do not meet that standard. For instance, although reciting that each plaintiff incurred hospital and medical expenses, and sustained and will sustain loss of earnings, they wholly failed to show the amounts of these items of damages. They did not show the amounts of future losses, whether the awards therefor had been discounted to present worth, or the rate of discount, if any, which was used. Cf. O'Connor v. United States, supra. The findings should be expanded to show the extent and duration of any disability resulting from physical injuries, and of the disfigurement resulting from scars and other injuries, and the awards should be broken down to show separately the amounts allowed for pain and suffering, physical injuries and loss of consortium. Hatahley v. United States, supra.

The proof shows that both plaintiffs resumed work after the accident, though Annie Alexander claims that she was forced to abandon work in 1955, some six years later. The trial court made no determination from which this court can ascertain whether there was any loss of earnings at all. In 1954 Annie Alexander

 

gave birth to a baby which unfortunately died. Many of her relatives appeared to have moved into the apartment occupied by plaintiffs and Annie Alexander seems to have been living with them. Whether this is a reason for her ceasing work does not appear from the proof. Nor is it clear as to what amount, if any, of the judgment in favor of John Alexander was attributable to loss of earnings. There are no findings on the subject from which this court can determine whether he suffered any loss in this respect.

In relation to plaintiffs' earning power prior to the accident and the proven special damages, a total award of $212,-000 may well be excessive, but before this court can determine whether the judgments are so excessive as to require revision or remittitur there must be findings as to damages upon which an intelligent review can be made.

 This court is mindful of the principle so frequently reiterated that the question of the excessiveness of a jury verdict is to be determined by the trial court on a motion for a new trial. In such cases the trial court, in effect, occupies the position of a reviewing judge. He has the power to pass upon, set aside or even reduce by remittitur excessive awards. Where a case is tried by a judge without a jury the defendant is deprived of this right. The first opportunity which an aggrieved defendant has in this respect in a non-jury trial is upon appeal. For these reasons it becomes most important that the trial court comply meticulously with the requirements of Rule 52(a) with respect to findings so that the appellate court can properly appraise the elements which entered into the award. Just as the trial judge passes upon possible passion or prejudice and all the other legal grounds for attacking excessive damages on the post-trial motion to set aside a jury verdict so on the appeal the appellate court should have some knowledge of the basis or theory upon which the trial judge acted. Without this information the defendant is unable properly to exercise the appellate rights conferred by statute and the court is equally unable to make appropriate appellate review.

Although there is no error in the trial court's finding as to liability, the case is remanded for findings as to damages and the entry or re-entry of such appropriate judgment as may be justified by the facts and the law.

On Motion to Clarify opinion and Judgment of the Court.

PER CURIAM.

We had thought appellant's requested clarification was implicit in the final paragraph of the opinion but since appellant has not so understood it, that paragraph is amended to read as follows:

"Although there is no error in the trial court's finding as to liability, the judgment appealed from is vacated and the case is remanded for findings as to damages and the entry or re-entry of such appropriate judgment as may be justified by the facts and the law."