DALE BENZ, INC., CONTRACTORS, an Arizona Corporation, et al., Appellants,

v.

AMERICAN CASUALTY COMPANY of Reading, Pennsylvania, Appellee.

No. 17464.

United States Court of Appeals

Ninth Circuit.

May 14, 1962.

Rehearing Denied Aug. 1, 1962.

See, e. g., Richison v. Nunn, 57 Wash.2d 1, 5, 340 P.2d 793, 795 (1959). This is not such a case.

Cox & Cox, Z. Simpson Cox, Phoenix, Ariz., for appellant.

Moore & Romley, Jarril F. Kaplan, Phoenix, Ariz., for appellee.

Marion R. Smoker, Newton Frishberg, Alfred S. Cox, Phoenix, Ariz., of counsel for the appellant.

Before HAMLEY and BROWNING, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

This action involves a claim by appellants (hereinafter Benz), a general contractor, against Appellee (hereinafter American), the surety of Basich Brothers Construction Company (hereinafter Basich), a subcontractor, for damages incurred as a result of the failure of

Basich to complete its subcontract with Benz. It is a diversity case wherein the district court had jurisdiction pursuant to the provisions of 28 U.S.C. § 1332, and the matter is brought here under 28 U.S.C. § 1291.

According to the pertinent allegations contained in the complaint, on or about the 14th day of May, 1958, Benz held a general contract with the United States of America for construction of certain buildings. On said date it entered into a subcontract with Basich for the performance of work and the furnishing of materials required under the general contract, on a job at the Marine Corps Supply Center, Barstow, California. American, as surety for Basich, made and executed a Performance and Payment Bond. On January 27, 1959, Benz gave American and Basich notice that Basich was in default under the subcontract. Numerous demands were made upon Basich and American for completion of said subcontract, but they failed to comply with said demands. Because of the refusal of Basich, and/or its surety, to complete the subcontract, Benz, as prime contractor, was required to complete the work at its own cost and expense. Benz now seeks to recover from American, the Basich surety, the money thus expended, plus interest and attorney fees.[1]

A bench trial was had between Benz and American Casualty Company and a judgment was entered for Benz in the sum of $12,525.00. Subsequently an order was entered denying Benz's "Motion to Amend and Supplemental Findings of Fact and Conclusions of Law" and "Motion to Alter and Amend Judgment or in the Alternative for New Trial." Benz has appealed from the above mentioned judgment and order, and also from an order denying its "Motion for Summary Judgment."

We will list the contentions argued by Benz in its opening brief filed in this Court. However, before doing so we are compelled to comment on the Dis-

trict Court's "Findings of Fact and Conclusions of Law." We have heretofore stated the following:

"Findings of fact are required under Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A. The findings should be so explicit as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." Irish v. United States, 225 F.2d 3, 8 (9th Cir., 1955).

Unfortunately the "Findings of Fact and Conclusions of Law" which were entered in this case fail to meet the standard alluded to in the above quotation. Therefore, the litigants, as well as this Court, are somewhat hampered by the Trial Judge's manner of handling this facet of the case.

Further, at this juncture it is important to bear in mind that findings of fact shall not be set aside unless clearly erroneous. See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

As a further preliminary statement to our discussion of this case we observe that ordinarily we would remand the matter back to the trial judge for more explicit findings. However, as this case is now before us we feel that we are in as good a position to determine the issues involved on the record before us as would be the trial judge on remand. Those issues arise out of and are concerned with figures and arithmetical calculations. In view of the foregoing, and to the end that useless motion and delay be eliminated we will determine the case at this time on its merits, being of the opinion that no good would be served by directing a remand for further and more specific findings.

In light of these comments we will address ourself to the following contentions contained in Benz's argument.

1. Benz also demanded judgment against Basich, but we are not concerned, herein, with that aspect of the case.

1. The District Court should have granted its Motion for Summary Judgment.

2. The computations of the District Court were erroneous.

A. Overhead is part of cost.

B. Ten Per Cent should have been added to the cost of the Yeager subcontract.

C. The Court erred in deducting wobble wheel rental of $4,200.00.

D. Back charges for October and November, 1958, are proper items of cost.

E. Damages to American were erroneously awarded.

i. Benz did not depart from the payment provisions of the subcontract.

ii. Benz did not misrepresent to American the percentage of the contract completed by Basich.

iii. There is no evidence that American suffered damage in any amount.

3. American is liable to Benz for attorneys' fees.

A discussion of the above assertions follows:

■ 1. The Court erred in denying Benz's motion for a summary judgment.

Pursuant to the provisions of Rule 56(c) of the Federal Rules of Civil Procedure, a summary judgment shall be rendered if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. It is obvious that the lower court had before it genuine issues of material facts, therefore, in accordance with the provisions of Rule 56(c) the District Court properly denied the motion of Benz for summary judgment.

■ 2A. Benz states that it is evident from the Findings of Fact and Conclusions of Law and the Judgment that the Trial Court deducted the overhead amount from its cost of finishing the Basich subcontract. It refers to Appendix B.[2]

■ 2B. Benz states, ten percent should have been added to the cost of the contract which Benz entered into with Yeager Brothers Construction Company for the completion of a portion of the uncompleted Basich subcontract.

A consideration of these assertions, 2A and 2B, involves an interpretation of paragraph 8 of the subcontract between Benz and Basich. This paragraph provides, inter alia, that should Basich fail to perform, Benz shall have the right after two days written notice, to terminate the contract. Further, "in that event, the Contractor [Benz] shall provide the necessary material, labor, etc., to complete the contract in whole or in part and charge the cost thereof plus 10% to the Subcontractor [Basich] * * *." Plaintiff's Exhibit 3.

The above quoted language does not contemplate the inclusion of overhead in the "cost" of finishing the Basich subcontract, but simply means that to the actual cost of material, labor, etc., should be added 10% of said costs. Therefore, the trial court properly deducted Benz's overhead of twenty-two percent.

Turning next to the question of whether ten percent should have been added to the cost of the Yeager subcontract. In support of its position, Benz cites the case of Hamilton v. Coogan, 7 Misc. 677, 28 N.Y.S. 21 (C.P.Ct.1894), which affirmed a judgment in favor of a contractor in an action to foreclose a mechanic's lien. The case held that ten percent profit may be added by the contractor to the cost of a subcontract even though

2. Appendix B represents the computations contained in American's Answering Memorandum, submitted to the District Court, and from which Benz states that the Court's figures in its Findings and Conclusions are obviously taken in toto. See Brief for Appellant, p. 6. As stated

above the Trial Court's Findings and Conclusions do not enable this Court to determine the grounds on which the Trial Court reached its decision, but in order to meet Benz's contentions we must consider the computations embodied in Appendix B.

a subcontractor includes his own profit in computing his charge to the contractor. This writer was not able to find a reported case directly in point and American did not treat us with any citations pertaining to this matter.

American concedes that Benz was entitled to subcontract a portion of the Basich work, but states "it is not at all certain that under the provisions of the Basich subcontract, Appellants [Benz] are entitled to add 10% to the price of another subcontract." Brief for Appellee, p. 12. From a reading of American's brief it appears that American implied that Benz would be entitled to ten percent in the event that Benz completed the necessary work itself, but, on the other hand, where Benz subcontracts the work it is not entitled to add ten percent. With this view, the majority of the Court agrees and, therefore, a ten percent markup on the Yeager subcontract has been excluded in our award.

However, in reference to this matter, the writer does not agree with American's theory nor with the holding of the majority of the court. Whether or not Benz, itself, actually performed the necessary work or subcontracted the same, does not, to this writer, seem to be a logical basis for allowing or disallowing a 10% markup. It is, of course, customary for a general contractor to subcontract work and as American concedes, Benz was entitled to subcontract a portion of the Basich work. This writer can not understand why, American, a surety of the party in default, can be permitted to successfully contend that Benz is entitled to a 10% markup only where Benz actually performed the work itself.

■ 2C. Benz asserts that the court allowed a set-off in the amount of $4,-200.00 [3] for a wobble wheel which belonged to Basich and was left at the job site and used by Basich. That there is absolutely no evidence that it, Benz, used the Wobble Wheel more than forty-two hours.[4] Further, that a "set-off" for the use of the wobble wheel was not affirmatively pleaded by American in accordance with Rule 13 of the Federal Rules of Civil Procedure.

American contends that Basich is entitled to a set-off against Benz for the use of the wobble wheel and that American is entitled to the benefit of the set-off.

We believe that American should be allowed a set-off,[5] even though it failed to affirmatively plead a set-off in accordance with Rule 13. However, the set-off should only be in the amount of $105.00,[6] for this was the amount included in the actual cost of completion as reflected in Plaintiff's Exhibit 12. Therefore, a deduction of $4,200.00 would be improper.

■ 2D. During the months of October and November, 1958, Benz was required to correct defective work of Basich at a cost of $3,275.93 and this is a proper item of cost.

The court found that in January, 1959, Basich became in default in the performance of the subcontract. See T.R. 28. Benz did not give Basich notice as pro-

---

3. $4,200.00 is the figure referred to in Appendix B as the amount of set-off allowable for the rental value of the wobble wheel. Apparently, this figure was reached by multiplying an estimated monthly rental of $200.00 by twenty one months, which is the length of time the wheel was left on the job.

4. The wobble wheel was used by Benz a total of forty two hours at a rental cost of $2.50 per hour for a total of $105.00. See Plaintiff's Exhibit 12, p. 3.

5. Pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, relating to issues not raised by the pleadings.

6. We are not unmindful of the fact that American asserts that Benz did not segregate the total charges for the use of the wobble wheel. See Brief for American, p. 13. However, the figure $105.00 was specifically charged for the use of the wobble wheel. See Plaintiff's Exhibit 12, p. 3. If American was entitled to a credit in excess of $105.00 it was incumbent upon American to prove any charges, relating to the use of the wobble wheel, in excess of $105.00.

vided for under paragraph 8 of the subcontract until January 27, 1959, and therefore the cost of corrective work done by Benz prior to that time should not have been allowed and apparently the sum of $3,275.93 was properly deducted.

█ 2E. Benz asserts that the District Court concluded that since Basich was required, under the subcontract, to complete the performance thereof for the sum of $12,525.00,[7] (plus retainage) then upon default by Basich, Benz also was required to complete the subcontract for $12,525.00, without regard to the actual cost to Benz of completing the necessary work under the subcontract.

This was clearly erroneous and needs no further comment. Benz, under the terms of the contract, was entitled to recover the actual cost of completing the Basich subcontract, plus 10%.

█ 2E(i). In Findings of Fact No. 5, the District Court found that Benz's "misrepresentation to defendant (American) and departure from the payment agreement in the subcontract" damaged American in the sum of $9,707.07. See T.R. 29.

Benz did not depart from the payment provisions of the subcontract with Basich for it was under a duty to pay over to Basich its money estimate of work done (less 10% retention) within ten days after receipt of payment by Benz from the Government. See Plaintiff's Exhibit 3, p. 3. Benz merely conformed to this provision and should not be penalized for having done so.

█ 2E(ii). Benz did not misrepresent to American the percentage of the contract completed by Basich.

On or about August 29, 1958, Benz received from American a General Form Status Inquiry which, among other things, asked Benz to state the approximate percentage of the contract completed. Benz placed the figure "80%" in the space provided therefor, and returned the form to American. Benz contends that this figure was based upon the pay schedule and progress billing submitted by Basich and approved by the Government, and therefore was not a misrepresentation, but was a correct "dollar wise" estimate. Further, that even assuming it was a misrepresentation, by the terms of the Inquiry, American waived its right to raise the issue of misrepresentation. See Defendant's Exhibit C.

We will treat the above contention, 2E(ii), in connection with the following.

2E(iii). Without proof of actual damages and proof of the amount thereof American can not recover damages.

Since there is no evidence that American suffered damage in any amount the Court erroneously found that American was damaged in the sum of $9,707.07.[8]

█ 3. In accordance with paragraph 16 [9] of the subcontract Basich is liable to Benz for attorneys' fees. The Performance and Payment Bond [10] refers to the subcontract and should be construed together, and therefore American is liable to Benz for attorneys' fees.

7. $12,525.00 represents the difference between the $63,000.00 contract price and $50,475.00, which is the amount received by Benz from the Government pursuant to the pay estimates of Basich.

8. $9,707.07 represents the difference between $22,232.07 (damage to Benz as reflected in Appendix B) and $12,525.00 (difference between the $63,000.00 contract price and $50,475.00, which is the amount received by Benz from the Government pursuant to the pay estimates of Basich).

9. This paragraph provides in part as follows: "Subcontractor [Basich] further

agrees to pay to Contractor [Benz] the amount of expenses and attorneys fees incurred by the Contractor because of any default of Subcontractor in the performance of the work or in the payment of labor, appliances, services and/or material bills." Plaintiff's Exhibit 3, p. 2.

10. It provides in part as follows: "[w]hich contract is hereby referred to and made a part hereof, as fully and to the same extent as if copied at length herein." Plaintiff's Exhibit 3, p. 5.

During the trial, it was stipulated that Mr. L. J. Cox, attorney for Benz, would testify that $9,200.00 is a reasonable amount for attorneys' fees. It is true, that American did not stipulate that this amount is a reasonable amount, but merely, that the testimony would be that it is a reasonable amount. Nevertheless American did not controvert this testimony and we believe it is a reasonable amount.

Since most of the legal work was accomplished prior to the taking of this appeal we believe that an award of attorneys' fees for this appeal should be limited to $1,500.00 for a total of $10,700.00.

Therefore, it appears that the correct computations of damages should be as follows:

|  |  |  |
|---|---|---|
| Actual Cost of Completion | | $45,345.48 [11] |
| Less improper backcharge for October and November, 1958 | $ 3,275.93 | |
| Less set-off for wobble wheel | 105.00 | |
| | | 3,380.93 |
| Adjusted actual cost | | $41,964.55 |
| Less balance due under subcontract: | | |
| Contract price | $63,000.00 | |
| Amount paid to Basich | $45,427.50 | |
| | | $17,572.50 |
| Damage to Benz | | $24,392.05 |
| Plus attorneys' fees below and on appeal | | $10,700.00 |
| Total damage plus attorneys' fees | | $35,092.05 |

———◆———

In accordance with this opinion it is, therefore,

Ordered, that the above entitled action is hereby reversed and remanded to the lower court with directions to enter judgment in the amount of $35,092.05 plus interest at the rate of 6% per annum from June 11, 1959,[12] to the date of entry of judgment.

11. This figure was mentioned in the briefs filed by both parties and during the oral argument counsel for American conceded that this figure was, for the purpose of this appeal, accepted as correct.

12. This date is referred to in the findings of fact and conclusions of law, as the date on which interest commences, and Benz has not asserted this to be in error.