**S. S. SILBERBLATT, INC., and the Travelers Indemnity Company, Appellants,**

v.

**UNITED STATES of America, for the Use and Benefit of LAMBERT CORPORATION, Appellee.**

No. 22123.

United States Court of Appeals
Fifth Circuit.

Nov. 22, 1965.

Richard U. Simon, Fort Worth, Tex., for appellants.

Gordon A. Dotson, Houston, Tex., Harold O. Clark, Waco, Tex., for appellee.

Before HUTCHESON and COLEMAN, Circuit Judges, and MORGAN, District Judge.

HUTCHESON, Circuit Judge.

This is an appeal from a judgment finding the primary contractor on a government construction project and its surety liable to the supplier of a subcon-

tractor for materials furnished for and used in the government project. Suit was brought under the Miller Act, 40 U.S.C.A. Sections 270a and 270b, and the Capehart Act, 42 U.S.C.A. Sec. 1594. We hold, for the reasons hereinafter stated, that this judgment must be vacated and the case remanded to the district court for further findings.

Shepard S. Silberblatt was involved in several construction projects for the United States. In 1960 Mr. Silberblatt entered into a contract with the United States for the construction of five housing projects totaling 800 family units at Fort Hood, Texas. S. S. Silberblatt, Inc. [hereinafter called Silberblatt, Inc.] was the prime contractor for this contract.[1] Mr. Silberblatt utilized separate corporations for the development of the five projects composing the one construction contract.[2] The corporations were denominated Fort Hood Housing Corporations Nos. 6–10. The construction contract was executed by Mr. Silberblatt as president of Silberblatt, Inc. and as president of each of the housing corporations. Five payment and performance bonds were executed covering this one construction contract, with Silberblatt, Inc. as principal and The Travelers Indemnity Company [hereinafter called Travelers]

as surety. A separate bond was executed for each of the housing corporations; each bond covered the particular project to be developed by the housing corporation to which it was issued.

Arcotex Painting Contractors, Inc. [hereinafter called Arcotex] was a subcontractor on the construction contract. Lambert Corporation [hereinafter called Lambert] supplied paints and painting materials to Arcotex for the five housing projects. Lambert delivered to Arcotex at its Fort Hood warehouse for use on the five housing projects $120,585.37 worth of paints and painting materials. Deliveries were made from March 4, 1961, through July 6, 1962. Lambert was not aware of the five separate housing corporations and had no control of or knowledge of the particular project in which the paints and painting materials were used; it merely supplied these items for the one construction project.

In February, 1962, Lambert advised Arcotex that further shipments would cease because of non-payment of the then due balance. Silberblatt, Inc. contacted Lambert. At the request of Silberblatt, Inc. and upon its guarantee of Arcotex's obligations,[3] Lambert resumed shipments to Arcotex until all five projects were completed. Lambert continued to bill

1. The one construction contract, Contract No. DA–41–243–eng–4294, states that Silberblatt, Inc. is the "Contracting Officer" and "submitted the lowest acceptable bid" for this project, thereby entitling it to the contract.

2. The construction contract indicates these corporations were "mortgagor-builders", which were to execute mortgages to finance the projects and lease from the United States the lands upon which the projects were to be built.

3. By letter dated Feb. 28, 1962, Silberblatt, Inc. wrote:

   Mr. Charles Lambert
   Lambert Corporation
   P. O. Box 151
   Houston, Texas
         Re: Fort Hood, Texas and
             Fort Leonard Wood, Mo.
   Dear Mr. Lambert:
     Receipt is acknowledged of yours of Feb. 26, 1962 with regard to your account with Arco-Tex Painting Contractors, Inc. at both of the above-captioned projects.

   As explained to you over the telephone, I have assured you that you will receive payment for all materials delivered and used at the above projects, provided that prices are found to be satisfactory. However, I have made no undertaking to pay you immediately against your open account until such time as I have had an opportunity to go over the matter with you and Mr. Abriss on my next visit to Fort Hood, which I expect to be sometime in the early part of March. This was agreeable to you.

   I believe this would work to our mutual advantage, since, although we have never undertaken to guarantee the obligations of Arco-Tex, we will, in your case, make an exception; understandably, we cannot undertake to release funds until we know and can agree on exactly what is involved.

   We are as anxious as you to clarify the entire problem to avoid the continuance of an area of uncertainty, and you need have no doubts that the writer will per-

Arcotex at the prices originally quoted to Arcotex. On March 14, 1962, Arcotex paid Lambert $18,000 on its account. Thereafter Arcotex paid for the continued shipments as the invoices for them became due. Arcotex issued its checks in the exact amount of the current invoices due and owing, noting on the checks the current amount due.[4] Arcotex followed a system of applying the payments on the balance due for current shipments. Lambert on the other hand credited these payments against the unpaid and past due balance owed by Arcotex. Upon completion of all five housing projects[5] and termination of shipments in July, 1962,[6] there remained unpaid on Arcotex's account $20,168.73. Arcotex and Silberblatt, Inc. refused to pay this balance. Notice of default of payment was given by Lambert to Silberblatt, Inc. and Arcotex by letter dated July 31, 1962, and mailed August 2, 1962; and to Travelers by letter dated and mailed August 24, 1962. Lambert instituted suit on November 13, 1962, against Arcotex, Silberblatt, Inc., and Travelers, jointly and severally. Arcotex failed to answer and an interlocutory decree was entered against it on March 25, 1963. Silberblatt, Inc. and Travelers answered and denied liability. These parties argued in the court below as follows: that each bond covered only the materials furnished for the particular project covered by it; that the payments made subsequent to March 18, 1962, were "applied" by Arcotex to current purchases, so that the unpaid balance represented paints and materials furnished prior to March 18, 1962, and used in one of the four projects completed on or before April 18, 1962; that recovery must be had, if at all, against the bonds covering these projects; that the notice of default of August, 1962, was not within the 90 day period required by such bonds;[7] and that therefore Silberblatt, Inc. and Travelers are not liable to Lambert. Lambert argued as follows: that Arcotex did not specifically direct application of payment for the amounts paid after March 18, 1962, and thus it was free to apply these payments to Arcotex's past due balance;

---

sonally attend to the matter within the time indicated.

> Very truly yours,
> S. S. Silberblatt, Inc.
> By: /s/ S. S. Silberblatt
> Shepard S. Silberblatt
> President

4. Shipments made after March 18, 1962, were paid for as received. Invoices for shipments from March 19 through March 29 totalled $7,845.77; for the month of April, $13,620.60; and for the month of May, $3,597.95. Arcotex issued checks in these exact amounts with a notation indicating the amounts corresponded to current billings.

5. Determination of Completion and Notice of Final Acceptance forms were received from the Department of Army as follows:

| Bonds Issued For: | Number of Units | Completion Date |
| --- | --- | --- |
| Fort Hood Housing Corp. No. 6 | 100 | Oct. 26, 1961 |
| Fort Hood Housing Corp. No. 7 | 222 | Dec. 6, 1961 |
| Fort Hood Housing Corp. No. 8 | 150 | Feb. 21, 1962 |
| Fort Hood Housing Corp. No. 9 | 170 | Apr. 18, 1962 |
| Fort Hood Housing Corp. No. 10 | 158 | July 6, 1962 |

---

6. Miscellaneous shipments in June and July totalled $404.50.

7. Each bond stated in pertinent part:
  2. The above named Principal [Silberblatt, Inc.] and Surety [Travelers] hereby jointly and severally agree * * * that every claimant [Lambert] * * * who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's * * * materials were furnished by such claimant * * * may sue on this bond. * * *
  4. No suit or action shall be commenced hereunder by any claimant:
    (a) Unless claimant shall have given written notice [of default] * * * before the expiration of the period referred to in condition 2 above [90 days]. * * *

that the unpaid balance represents materials most recently supplied and used in the last project, completed July 6, 1962; that the notice of default was given within 90 days after the completion of said project and the furnishing of materials therefor; and that therefore Lambert is entitled to recover against Silberblatt, Inc. and Travelers on the bond covering the last project. Lambert also relied on the "guarantee" given by Silberblatt, Inc. in February, 1962, contending that such waived any complaints regarding the timeliness of the notice of default. The case was tried to the court without a jury and resulted in a judgment against Silberblatt, Inc. and Travelers on the bond covering the last project and issued to Fort Hood Housing Corp. No. 10.[8]

At the outset we acknowledge our general agreement with the result reached by the court below. The appellants [Silberblatt, Inc. and Travelers] do not suggest that Lambert's claim does not represent materials furnished for and used in the Fort Hood projects. Rather appellants rely on the technical defense (albeit an honest one) that Lambert has failed to comply with the notice provisions imposed on it by the bonds and thus cannot recover from appellants. Only one construction contract, one prime contractor (Silberblatt, Inc.), one surety (Travelers), and one subcontractor (Arcotex) were involved. Had there been only one bond covering this contract and these parties Lambert would be entitled to recover. The technical defense asserted arises because of a proliferation of corporations created by and for these parties, and the resultant multitude of bonds. It seems unjust to allow an ad-

mittedly valid claim to be avoided by such manipulations. Be that as it may, no suggestion has been made in this Court or in the court below that the formal aspects of this transaction should be disregarded and set aside. Thus we must view the transaction in the form in which it was cast by the parties.

Appellant Silberblatt, Inc. employed five corporations for the development of the five projects composing the one construction contract. Each corporation executed a separate bond covering the project assigned to that corporation. Each bond covered only the materials furnished for the project covered by it. For Lambert to recover against a particular bond it must show that the amount owing it represents materials used in the project covered by that bond. This Lambert sought to do by showing that the amount owing it represents materials furnished for and used in the last project, thus entitling it to recover on the bond for the last project. Appellants claimed Arcotex paid for all materials used in the last project by directing Lambert to apply to current purchases (i e., the materials used in the last project) the payments made after March 18, 1962. Appellants contended the amount owing Lambert represents materials used in some earlier project and thus recovery cannot be had under the bond for the last project. In legal principle appellants' argument is sound. A debtor making a voluntary partial payment of his indebtedness to a creditor may direct to which portion of the indebtedness the payment shall be applied, and the creditor must apply the payment as directed or return it.[9] Thus the determinative issue is whether Arcotex did in fact direct

8. The court awarded judgment for the amount of Lambert's claim, $20,168.73, together with interest from the date of the notice of default to the surety [Travelers], attorney's fees, and costs.

9. In Jones v. United States, 7 How. 681, 48 U.S. 681, 687, 12 L.Ed. 870 (1849), the Supreme Court said:
   In the general proposition upon this subject, all the courts agree. It is

this:—"That the party paying may direct to what the application is to be made. If he waives his right, the party receiving may select the object of appropriation. If both are silent, the law must decide."

To the same effect, see National Bank of the Commonwealth of New York City v. Mechanics' Nat'l. Bank, 94 U.S. 437, 24 L.Ed. 176 (1876); O'Dell v. United States, 326 F.2d 451 (10th Cir. 1964);

Lambert to apply to current purchases the payments made after March 18, 1962. The district court, in its unpublished opinion, noted the conflicting treatment of the payments by Arcotex and Lambert.[10] From these facts the court found, as Conclusion of Law No. 2, that

> Gerrymandered application by the subcontractor [Arcotex] and/or prime contractor [Silberblatt, Inc.] of payments to the running account of the supplier-plaintiff [Lambert] would not bar the claim of the supplier who continuously furnished materials received by the subcontractor and used in the projects up to their final acceptance. Under the Miller Act * * * the plaintiff is entitled to recover the balance unpaid on all of the materials which had been furnished up to the conclusion of the whole contract.

We hold these findings and conclusions are insufficient bases upon which to rest the district court's judgment and that the case must be remanded for further findings. Fed.R.Civ.P. 52(a) requires that "in all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon * * *." The purpose of this rule "is to aid the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court". 2B Barron & Holtzoff, Federal Practice & Procedure Sec. 1121, p. 481 (Wright ed. 1961); see 5 Moore, Federal Practice Sec. 52.06 [1], p. 2653 (1964). Findings of fact must be made in sufficient detail and exactness "to indicate the factual basis for the ultimate conclusion" reached by the court.[11] Kelley v. Everglades Drainage Dist., 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943). Accord, Featherstone v. Barash, 345 F.2d 246 (10th Cir. 1965); Woods Constr. Co. v. Pool Constr. Co., 314 F.2d 405 (10th Cir. 1963); Dale Benz, Inc. v. American Cas. Co., 303 F.2d 80 (9th Cir. 1962); National Lead Co. v. Western Lead Prods. Co., 291 F.2d 447 (9th Cir. 1961); Cross v. Pasley, 267 F.2d 824 (8th Cir., 1959) (per curiam); Alexander v. Nash-Kelvinator Corp., 261 F.2d 187 (2d Cir. 1958). Careful consideration of the district court's opinion compels the conclusion that adequate findings of fact have not been made. Finding of Fact No. 13 merely states the conflicting positions

---

Compagnia Maritima La Empresa, S.A. v. Pickard 320 F.2d 829 (5th Cir. 1963); Burton Swartz Land Corp. v. Commissioner of Internal Revenue, 198 F.2d 558 (5th Cir. 1952); Lehigh & H. R. Ry. v. Commissioner of Internal Revenue, 36 F.2d 719 (2d Cir. 1929), cert. denied, 281 U.S. 748, 50 S.Ct. 353, 74 L.Ed. 1160 (1930); Phillips v. Herndon, 78 Tex. 378, 14 S.W. 857 (Tex.1890); Carey v. Ellis, 46 S.W.2d 1012 (Tex.Civ.App.—San Antonio 1932); Johnson v. Cox, 270 S.W. 892 (Tex.Civ.App.—Waco 1925). See 40 Am.Jur. Payment Sec. 110, pp. 792–93 (1942); 70 C.J.S. Payment, § 52, pp. 257–259 (1951).

10. The court made Findings of Fact and Conclusions of Law. Finding of Fact No. 13 states:

> All payments made on the account by the subcontractor, ARCOTEX PAINTING CONTRACTORS, INC., were credited on the books of LAMBERT COR-PORATION against the unpaid balance due by ARCOTEX PAINTING CONTRACTORS, INC. On the other hand, ARCOTEX PAINTING CONTRACTORS, INC., after the prime contractor's assurance to the supplier of Feb. 28, 1962, and after a payment made on March 14, 1962 of $18,000.00, followed a system of applying the payments made by them on the balance due on current shipments being received.

11. "The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence." Carr v. Yokohama Specie Bank, Ltd., 200 F.2d 251, 255 (9th Cir. 1952). Accord, Zimmerman v. Montour R.R., 296 F.2d 97 (3d Cir. 1961), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 793 (1962); Weber v. McKee, 215 F.2d 447 (5th Cir. 1954).

of the parties and does not determine whether Arcotex directed application of payments; nor can it be said that the court determined this issue in its Conclusion of Law No. 2.[12] Without a specific finding on this fundamental fact we cannot determine the validity of the district court's judgment. It is not the province of this court to determine the essential facts on which the judgment is based; that is the proper function of the trial court. Woods Constr. Co. v. Pool Constr. Co., supra; First Nat. Bank of Fort Smith v. Mattingly, 312 F.2d 603 (10th Cir. 1962); National Lead Co. v. Western Lead Co., supra; Cross v. Pasley, supra. The judgment entered below is vacated and set aside and the case remanded with directions to make further and more specific findings of fact [13] and to enter judgment accordingly.

Our action here is confined to a remand for further findings. We do not (and we note the court below did not) pass upon whether timely notice of default was waived by the letter of February 28, 1962, from Silberblatt, Inc.; or whether this letter rendered Silberblatt, Inc. liable to Lambert as the guarantor of Arcotex's obligations; nor do we reach any of the other issues presented by appellants. All of these questions will be considered by the district court, which should where necessary make specific findings of fact and conclusions of law as to each of them, as required by Fed.R.Civ.P. 52(a).

The judgment is vacated and the cause remanded.

---

12. Had the court in Conclusion of Law No. 2 determined whether Arcotex directed application of payment and erroneously called this finding of fact a conclusion of law, we would have a full understanding of the basis of the court's judgment and a remand for this purpose would not be necessary. Smith v. Fletcher, 80 U.S. App.D.C. 263, 152 F.2d 20 (1945); Polaroid Corp. v. Markham, 80 U.S.App.D.C. 225, 151 F.2d 89 (1945); Bendix Home Appliances, Inc. v. Radio Accessories Co., 129 F.2d 177 (8th Cir. 1942). The court's Conclusion of Law No. 2 is apparently founded on a mistaken rule of law, that being that Arcotex could not direct application of payment. We do not believe it is reasonable to view this statement as indicating the court found as a fact that Arcotex did not direct application of payment.

13. See Hatahley v. United States, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); Kelley v. Everglades Drainage Dist., 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943); Featherstone v. Barash, 345 F.2d 246 (10th Cir. 1965); Pure Oil Co. v. Superior Oil & Tire Co., 317 F.2d 330 (6th Cir. 1963); Harrison Constr. Co. v. Ohio Turnpike Comm'n, 316 F.2d 174 (6th Cir. 1963); Woods Constr. Co. v. Pool Constr. Co., 314 F.2d 405 (10th Cir. 1963); First Nat. Bank of Fort Smith v. Mattingly, 312 F.2d 603 (10th Cir. 1962); National Lead Co. v. Western Lead Co., 291 F.2d 447 (9th Cir. 1961); Cross v. Pasley, 267 F.2d 824 (8th Cir. 1959) (per curiam); Alexander v. Nash-Kelvinator Corp., 261 F.2d 187 (2d Cir. 1958); Major Appliance Co. v. Gibson Refrigerator Sales Corp., 254 F.2d 497 (5th Cir. 1958).